Zel M. Fischer, Chief Justice
Easter Seals Midwest and Charity Twine appeal the circuit court's denial of a motion to compel arbitration pursuant to § 435.440.1.[1] They argue the circuit court erred in refusing to compel arbitration because the arbitration agreement - signed by both Easter Seals and Lewis Soars - contains valid delegation clauses mandating *113 that the arbitrator has exclusive authority to decide threshold issues of interpretation, applicability, enforceability, or formation. The circuit court's order is reversed.
Factual and Procedural History
Easter Seals Midwest (ESM), a charitable organization, presents each new, at-will employee with a standalone arbitration agreement ("Agreement") to be signed as a necessary condition of initial employment with the organization. The Agreement provides in relevant part:
As consideration for employment with Easter Seals-Midwest, I hereby knowingly agree and consent to submit any disputes, claims, or controversies that may arise out of my application for employment, employment, and/or termination of employment with Easter Seals-Midwest to binding arbitration in any such claims against Easter Seals-Midwest and/or its current or former employees.
In return for the signee's acceptance, ESM "agrees to submit any disputes, claims, or controversies that may arise out of my application for employment, hiring, employment, and/or termination of employment with Easter Seals-Midwest to binding arbitration."
Additionally, the Agreement includes a delegation clause, identical to the one upheld in Rent-A-Center, West, Inc. v. Jackson , 561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), providing:
The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.
The Agreement also prescribes the selection of a neutral arbitrator and the arbitration itself is to be in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes.
Lewis Soars signed the Agreement as a condition of his employment in October 2015, during his pre-employment orientation. Soars was made aware his employment with ESM was conditioned upon him signing the Agreement.
In January 2016, Soars was terminated from ESM after he refused to participate in an internal investigation involving accusations against him of abuse or neglect of ESM's clients. In response, he filed suit against ESM in circuit court for wrongful discharge, and against ESM and ESM employee Charity Twine for race discrimination. ESM and Twine jointly filed a motion to compel arbitration.[2] Soars argued the Agreement and delegation clause lack consideration and mutuality, and are unconscionable. In March 2017, the circuit court overruled ESM and Twine's joint motion. ESM and Twine appeal pursuant to § 435.440.1, the court of appeals affirmed the circuit court's order with a written order pursuant to Rule 84.16(b), and this Court granted transfer. Mo. Const. art. V, sec. 10.
Analysis
The denial of a motion to compel arbitration is reviewed de novo.
*114 Ruhl v. Lee's Summit Honda , 322 S.W.3d 136, 138 (Mo. banc 2010). Arbitration is a matter of contract under the Federal Arbitration Act (FAA). AT&T Mobility, LLC v. Concepcion , 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ; State ex rel. Pinkerton v. Fahnestock , 531 S.W.3d 36, 43 (Mo. banc 2017). An arbitrator's authority over a particular dispute exists only "because the parties have agreed in advance to submit such grievances to arbitration." AT&T Techs., Inc. v. Commc'ns Workers of Am. , 475 U.S. 643, 648-49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Ctr. , 561 U.S. at 68, 130 S.Ct. 2772. Accordingly, it "is simply an additional, antecedent agreement the party seeking arbitration asks the ... court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 70, 130 S.Ct. 2772. A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
"Generally any silence or ambiguity concerning the scope of arbitrable issues should be resolved in favor of arbitration." Pinkerton , 531 S.W.3d at 43 (internal quotations omitted). However, when considering whether a court or an arbitrator should decide threshold questions of arbitrability, there is generally a presumption against arbitrability. First Options of Chi., Inc. v. Kaplan , 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "[C]lear and unmistakable evidence" the parties manifestly intended to arbitrate questions of arbitrability is required to overcome this presumption. Rent-A-Ctr. , 561 U.S. at 69 n.1, 130 S.Ct. 2772 ; see also Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (referring to this evidentiary standard as an "interpretive rule").
Here, the Agreement's delegation clause was clear in evincing a manifest intention to delegate threshold questions of arbitrability to a neutral arbitrator, and is identical to the provision at issue in Rent-A-Center . The parties expressly agreed to give an arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation," and the question now is whether the Agreement was validly reached.
Invalidation of an arbitration agreement requires a specific challenge to the arbitration agreement, not to the contract as a whole. Ellis v. JF Enters., LLC , 482 S.W.3d 417, 423-24 (Mo. banc 2016). Arbitration agreements are severable and "are to be considered separate and apart from any underlying or contemporaneously related agreement." Id. at 419. Because a delegation provision is an additional arbitration agreement, it should be treated as an additional "written provision ... to settle by arbitration a controversy." Rent-A-Ctr. , 561 U.S. at 71, 130 S.Ct. 2772 (quoting 9 U.S.C. § 2 ). Therefore, the delegation provision itself is severable and should be considered separately from the underlying arbitration agreement. See id. at 72, 130 S.Ct. 2772 ("In this case, the underlying contract is itself an arbitration agreement. But that makes no difference. Application of the severability rule does not depend on the substance of the remainder of the contract."). For Soars to properly contest the validity of the delegation provision, he must have challenged the delegation provision specifically. Otherwise it is treated as valid and enforced - "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. ; see 9 U.S.C. §§ 2 - 4 ;
*115 Pinkerton , 531 S.W.3d at 50-51.[3]
Soars' arguments against the delegation provision in circuit court were expressly identical to his arguments against the Agreement as a whole.[4] Throughout his initial filing with the circuit court detailing his opposition to ESM and Twine's motion to compel arbitration, Soars failed to direct any specific arguments to the delegation provision apart from merely tacking on the phrase "disputed delegation clause" to each argument made against the Agreement itself.
In Pinkerton , this Court dealt with similar arguments leveled against a facially valid delegation provision. Pinkerton had raised one specific claim against the delegation provision - that it was unconscionable to delegate threshold determinations to an arbitrator. The Court found that argument to be without merit. Though Pinkerton claimed he had raised other challenges specific to the delegation provision, the Court found his arguments, in effect, were challenges to the Agreement as a whole, regardless of how he had worded them.
*116 Just as the relator did in Pinkerton , Soars has attempted to circumvent this Court's and the United State Supreme Court's holding that a party must specifically challenge a delegation provision to avoid its application.[5] Soars asserted in the circuit court that both the delegation provision and the Agreement lack mutual obligations due to their questionable application to claims by other employees against him. This was not a specific challenge to the delegation provision, nor does the argument have any merit. The Agreement as a whole prescribes arbitration for "any such claims against Easter-Seals Midwest and/or its current or former employees." ESM notes in its brief that all ESM employees are required to sign arbitration agreements before working - meaning every employee is required to bring its claims against the company and/or current or former employees in arbitration. Therefore, both the delegation provision and the Agreement would apply to any claims brought by other employees or the company itself against Soars regarding employment disputes.
He also contended in the circuit court that both the delegation provision and the Agreement lack mutual obligations because ESM reserves for itself the right to bring its most likely claims in Court against Soars. Not only was this challenge not specific to the delegation provision, it also does not apply to it. The delegation clause is clear it applies to "any dispute" regarding "the interpretation, applicability, enforceability[,] or formation" of the Agreement, and the wording does not indicate any party- or claim-specific application of the delegation provision.
Lastly, and most notably, Soars contended in the circuit court there was no consideration for either the Agreement or the delegation provision. Whether this could be construed as a challenge specific to the delegation clause is for another day. Assuming, arguendo , it was a specific challenge, the argument fails. The delegation provision is supported by adequate consideration because the provision, severed from the rest of the Agreement and considered by itself, is a bilateral contract supported by consideration.
A contract consisting of mutual promises to undertake some legal duty or liability between parties is a bilateral contract. Baker v. Bristol Care, Inc. , 450 S.W.3d 770, 776 (Mo. banc 2014). In a bilateral contract, "a promise by one party to a contract is a sufficient consideration for a promise by the other party." Ragan v. Schreffler , 306 S.W.2d 494, 499 (Mo. 1957) ; see also Braudis v. Helfrich , 265 S.W.2d 371, 372 (Mo. 1954). This is true as long as the promises are not illusory. Baker , 450 S.W.3d at 776. "A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." Id. When determining the existence of consideration, the Court does not evaluate the adequacy of the consideration. Sanger v. Yellow Cab Co. , 486 S.W.2d 477, 481 (Mo. banc 1972). This is because "the general rule of freedom of contract includes the freedom to make a bad bargain." Id. at 482. "[I]t is the policy of the law not to weigh the quantum of consideration, but, refraining from interference with the freedom of contract, suffer the parties to exercise freely their *117 judgment and will in consummating agreements and determine for themselves the benefits derived from their bargains." Brown v. Weare , 348 Mo. 135, 152 S.W.2d 649, 653-54 (Mo. 1941).
Whether the Agreement as a whole contains illusory provisions is for the arbitrator to determine so long as the delegation provision, standing alone, is valid. Through the delegation provision, both parties have mutually agreed to arbitrate all threshold questions of arbitrability. It is a mutual promise to arbitrate any threshold questions of arbitrability which may arise. Because neither ESM nor Soars retains any unilateral right to amend the delegation clause nor avoid its obligations, the delegation clause is bilateral in nature and consideration is present.
Though most, if not all, of Soars' arguments were directed at the Agreement as a whole and not at the delegation clause specifically, his only arguably specific challenge to the clause - that it lacked consideration - is without merit. Therefore, the Court must treat the clause as valid under 9 U.S.C. § 2, "and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Ctr. , 561 U.S. at 72, 130 S.Ct. 2772.
Conclusion
The circuit court's order overruling ESM's motion to compel arbitration is reversed, and the circuit court shall stay the case and order the parties to proceed to arbitration to determine threshold issues of arbitrability.
Wilson Russell, Powell and Breckenridge, JJ., concur; Draper, J., dissents in separate opinion filed; Stith, J., concurs in opinion of Draper, J.
DISSENTING OPINION
George W. Draper III, Judge
I respectfully dissent from the principal opinion. I would affirm the circuit court's denial of Easter Seals Midwest and Charity Twine's (hereinafter, and collectively, "Easter Seals") joint motion to compel arbitration. Further, I find it disturbing the principal opinion's position fundamentally changes Missouri law without discussion of the myriad of arbitration cases discussing agreements to arbitrate in an at-will employment context.
"The issue of whether a dispute is subject to arbitration is subject to de novo review." Ruhl v. Lee's Summit Honda , 322 S.W.3d 136, 138 (Mo. banc 2010). Because Easter Seals is seeking to compel arbitration, it has the burden to demonstrate a valid and enforceable arbitration agreement. Whitworth v. McBride & Son Homes, Inc., 344 S.W.3d 730, 737 (Mo. App. W.D. 2011).
"[A]rbitration is a matter of contract, and parties will be compelled to arbitrate their claims only if the arbitration agreement satisfies the essential elements of a valid contract." Jimenez v. Cintas Corp. , 475 S.W.3d 679, 683 (Mo. App. E.D. 2015) (quoting Marzette v. Anheuser-Busch, Inc., 371 S.W.3d 49, 52 (Mo. App. E.D. 2012) ). While the Federal Arbitration Act frames the enforcement of an arbitration contract, the circuit court is charged with determining whether the parties entered into a valid agreement to arbitrate in the first instance. Jackson v. Higher Educ. Loan Auth. of Mo. , 497 S.W.3d 283, 287 (Mo. App. E.D. 2016). Further, the Federal Arbitration Act provides an arbitration agreement may be valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Missouri contract law applies to determine whether the parties have entered [into] a valid agreement to arbitrate."
*118 Baker v. Bristol Care, Inc. , 450 S.W.3d 770, 774 (Mo. banc 2014) (quoting State ex rel. Vincent v. Schneider , 194 S.W.3d 853, 856 (Mo. banc 2006) ).
There must be a valid and enforceable agreement to arbitrate before arbitration can be imposed upon a party. Dunn Indus. Gp., Inc. v. City of Sugar Creek , 112 S.W.3d 421, 427-28 (Mo. banc 2003). A valid contract requires "offer, acceptance, and bargained for consideration." Johnson v. McDonnell Douglas Corp. , 745 S.W.2d 661, 662 (Mo. banc 1988). "Consideration 'consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party.' " Baker , 450 S.W.3d at 774 (quoting Morrow v. Hallmark Cards, Inc. , 273 S.W.3d 15, 25 (Mo. App. W.D. 2008) ). Additional consideration for an arbitration clause is unnecessary "as long as the contract as a whole meets the consideration requirement." Eaton v. CMH Homes, Inc. , 461 S.W.3d 426, 433 (Mo. banc 2015).
"[A]t-will employment, by its very moment-by-moment nature, is not a legally enforceable contract of employment." Morrow , 273 S.W.3d at 26. "An essential element to an employment contract is a statement of duration." Luethans v. Washington Univ. , 894 S.W.2d 169, 172 (Mo. banc 1995). Because employment is terminable by either the employee or the employer without any notice or for any cause, neither party has an obligation to continue the relationship.
The principal opinion circumvents addressing the underlying issue of whether there was an employment contract to support the arbitration agreement by assuming, without discussion or analysis, the underlying arbitration agreement was formed validly under Missouri law. However, for more than a decade, Missouri courts have determined consistently a promise of "continued" at-will employment is insufficient to support consideration to create a valid employment contract because there is no offer of continuing employment for an at-will employee. Morrow , 273 S.W.3d at 27 ; see also Frye v. Speedway Chevrolet Cadillac , 321 S.W.3d 429 (Mo. App. W.D. 2010) ; Kunzie v. Jack-In-The-Box, Inc. , 330 S.W.3d 476 (Mo. App. E.D. 2010) ; Clemmons v. Kansas City Chiefs Football Club, Inc. , 397 S.W.3d 503 (Mo. App. W.D. 2013) ; Baker , 450 S.W.3d 770 ; State ex rel. Alst v. Harrell , 528 S.W.3d 442 (Mo. App. W.D. 2017). Further, Missouri courts have determined because there is no consideration for the continuing employment of an at-will employee, there equally is no consideration at the outset of at-will employment. See Whitworth , 344 S.W.3d 730 ; Marzette , 371 S.W.3d 49 ; Sniezek v. Kansas City Chiefs Football Club , 402 S.W.3d 580 (Mo. App. W.D. 2013) ; Jimenez , 475 S.W.3d 679 ; Jackson , 497 S.W.3d 283 ; Wilder v. John Youngblood Motors, Inc. , 534 S.W.3d 902 (Mo. App. S.D. 2017).[1]
The principal opinion openly acknowledges it believes all prior Missouri case law regarding at-will employment should be disregarded because this arbitration agreement was merely a delegation provision, which should be delegated to an arbitrator pursuant to *119 State ex rel. Pinkerton v. Fahnestock , 531 S.W.3d 36 (Mo. banc 2017). The principal opinion's reliance upon Pinkerton is not only misplaced, it is wrong. The plaintiff in Pinkerton was not an employee but, rather, a student seeking to enroll at a school to learn how to become an aircraft technician. Id. at 40.
The student submitted his application and then signed an enrollment agreement, with the school which, among other things, detailed the school's program, graduation requirements, tuition, fees, policies regarding cancellation and termination, and an arbitration provision. Id. This Court found the arbitration provision allowed for delegation to the arbitrator to determine the threshold questions of arbitrability. Id. at 43.
Whether there is a delegation provision within the arbitration provision is a matter of contract interpretation. Id. at 44. "Interpretation of a written contract is a question of law." Id. In Pinkerton , the student contracted with the school for its services and part of that contract included the arbitration agreement with a delegation provision. Id. Accordingly, in those circumstances, it was proper to delegate issues to the arbitrator.
Lewis Soars (hereinafter, "Soars") was offered at-will employment with Easter Seals upon the condition he sign the arbitration agreement. Because Soars was an at-will employee, there was no employment contract. "The 'fundamental component of the at-will employment relationship--the ability to quit or be fired at any[ ]time for any reason' does not create a legally sufficient obligation on either party to the at-will employment relationship to create consideration." Wilder , 534 S.W.3d at 914 n.4 (quoting Frye , 321 S.W.3d at 438 ). Because there was no consideration, there was no valid contract to support the arbitration agreement or the delegation provision.
I believe the arbitration agreement in this case is not enforceable because it lacked legal consideration due to Soars' at-will employment status. Accordingly, I would affirm the circuit court's order, which upholds more than decade of Missouri case law.

All statutory references are to RSMo 2016, unless otherwise noted.

According to § 435.355, the correct designation of this action is an "application" to compel arbitration. Here, the parties filed it as a "Joint Motion to Dismiss, or, In the Alternative, Motion to Stay Action and Compel Arbitration." When denying said motion, the court's order expressly referred to it by the name given to it by Twine and ESM, and this Court will refer to it by the name reflected in the pleadings.

The dissent fails to recognize this critical step in analyzing the validity of delegation provisions - focusing instead on the validity of the arbitration agreement as a whole. However, the question of an arbitration agreement's validity as a whole is not for this Court to decide when the delegation provision is valid and enforceable. There would be no purpose behind a delegation provision if the opposite were true. This Court has held formation issues may be delegated to arbitration if a valid delegation provision exists. Pinkerton , 531 S.W.3d at 49. The delegation provision in this case is a valid, bilateral contract supported by consideration.
Nonetheless, the present case is entirely distinguishable from this Court's holding in Baker that continued at-will employment does not provide consideration to form a valid arbitration agreement. Id. at 777. Though the dissent cites court of appeals opinions finding initial at-will employment does not provide consideration, this Court has never decided whether initial at-will employment is consideration for an arbitration agreement.
Whether consideration exists to support a contract's validity is a question of formation. Baker v. Bristol Care , 450 S.W.3d 770, 774 (Mo. banc 2014). "The consideration of a contract can consist either in a benefit conferred upon the promisor or in a legal detriment to the promisee, which means that the promisee changes his legal position." State ex rel. Kansas City v. State Highway Comm'n , 349 Mo. 865, 163 S.W.2d 948, 953 (Mo. banc 1942). The difference in consideration analysis between an offer of continued at-will employment and an offer of initial at-will employment is paramount.
When continued at-will employment is offered in exchange for a signed arbitration agreement, at the time of the offer the employee already enjoys the rights and expectations that come with the employer-employee relationship. However, before the employee was hired, an employer-employee relationship did not exist. At the point of hiring, the employer confers the benefit of employment upon the employee, and it is axiomatic that with the benefit of employment comes a bundle of legal rights and expectations to which the employee was not entitled prior to the handshake. The dissent is mistaken in suggesting the two situations should be compared, because both present wholly distinct questions of law and fact.
The dissent is also mistaken in suggesting this Court has denied four applications for transfer which would have presented and resolved the issue of whether providing initial at-will employment is consideration for an arbitration agreement. Only the denial of transfer in Jimenez v. Cintas Corp. , 475 S.W.3d 679 (Mo. App. E.D. 2015), presented that issue and regardless of quantity, "[t]his Court's decision to not exercise discretionary review of [Jimenez ] implies nothing about the merits of the lower court's decision. The denial of transfer more than [three] years ago was not an endorsement of the opinion and does not affect this Court's decision today." Estate of Mickels , 542 S.W.3d 311, 314 n.5 (Mo. banc 2018) (internal citations omitted).

Specifically, Soars pointed out the "disputed agreement and the disputed delegation clause fail for the same reasons : they lack consideration, lack mutuality of obligation, and are unconscionable." Plaintiff's Opposition, p. 2, (emphasis added).

"The dissenting opinion contends the record clearly shows Mr. Pinkerton specifically challenged the delegation provision and points to a motion he filed stating in capital letters that he 'disputes the existence and enforceability of any agreement to delegate issues of arbitrability to an arbitrator.' What the dissenting opinion ignores is that Mr. Pinkerton then proceeded to challenge the arbitration agreement as a whole." Pinkerton , 531 S.W.3d at 52 n.12.

While the principal opinion correctly states this Court has never decided explicitly whether initial at-will employment is consideration which would support an arbitration agreement, the court of appeals has ruled on this issue multiple times. Further, this issue has been presented to this Court by way of applications for transfer by parties in four of the court of appeals' cases. Rather than accepting transfer to make an explicit statement or overruling these cases, this Court has declined to accept transfer, which results in the court of appeals' opinions remaining as valid precedent.