

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| SCOTT CALDWELL, | ) | No. ED106237-01 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | Honorable Joseph L. Walsh, III |
| UNIFIRST CORPORATION and | ) | |
| MICHAEL DEAN SEEVER, II, | ) | |
| | ) | |
| Appellants. | ) | Filed: April 2, 2019 |

In this action brought by Scott Caldwell alleging employment discrimination by his former employer and supervisor, the defendants appeal from the circuit court's order denying their motion to compel arbitration. Defendants contended that Mr. Caldwell had signed a valid and enforceable arbitration agreement that required them to arbitrate Mr. Caldwell's claims. And most critically, defendants argued that the arbitration agreement delegated all threshold issues, including formation and enforcement issues, to the arbitrator for determination. Mr. Caldwell argued that the agreement and delegation provision lacked consideration. The circuit court agreed with Mr. Caldwell and denied defendants' motion. In light of the recent decision of the Supreme Court of Missouri in *Soars v. Easter Seals Midwest*, 563 S.W.3d 111 (Mo. banc 2018), we must reverse and remand.

## Factual & Procedural Background

Mr. Caldwell filed a petition against the defendants with the following allegations. Mr. Caldwell began working for UniFirst as a District Service Manager in May of 2012. His job duties included supervising and managing route drivers, scheduling, customer service, territory and route sales, and other general managerial responsibilities.

In January of 2014, Mr. Caldwell's lower back began to cause him great discomfort and pain. His physician diagnosed him as having a lumbar disc protrusion, a lumbar disc herniation that impinged on nerve roots, and severe intractable back and leg pain. Mr. Caldwell's physician recommended restrictions on lifting and repetitive bending. At first, UniFirst accommodated these restrictions. Mr. Caldwell satisfactorily performed his job duties with the limited accommodations in place.

The work environment changed at the end of 2014. In mid-December, with Mr. Caldwell still experiencing severe pain, Mr. Caldwell's physician ordered Mr. Caldwell to take eleven days off work, and then to return to light duty. Over the next several months, the physician ordered further limitations on weight-lifting, bending, stooping, squatting, climbing, twisting, and kneeling. He also advised against long periods of sitting, and recommended frequent rest breaks from standing, sitting, or walking.

Michael Seever, Mr. Caldwell's supervisor, protested, calling Mr. Caldwell's need for time off "unacceptable." Further, he disregarded Mr. Caldwell's repeated requests for accommodation. Instead, he repeatedly assigned Mr. Caldwell, a district service manager, to the more physically strenuous tasks of a route sales representative. In March, Mr. Seever outright denied Mr. Caldwell's accommodation requests and unilaterally placed Mr. Caldwell on

2

extended non-paid medical leave, telling Mr. Caldwell he had done so because Mr. Caldwell had filed a workers' compensation claim.

Mr. Caldwell underwent surgery at the end of May 2015. His physician informed UniFirst that Mr. Caldwell could return to work at the end of June with restrictions, and that he could return to full duty without restrictions at the beginning of August. UniFirst, however, did not allow Mr. Caldwell to return to work. Instead, the company denied Mr. Caldwell's requests for accommodation and unilaterally extended his non-paid medical leave to the end of July. UniFirst fired Mr. Caldwell by letter dated July 27, 2015.

Mr. Caldwell sued UniFirst and Mr. Seever for employment discrimination, in violation of the Missouri Human Rights Acts. He alleged that UniFirst and Mr. Seever refused to accommodate his disability, that they discharged him because of his disability, and that they retaliated against him because he complained of discrimination and requested accommodations for his disability. Mr. Caldwell also alleged that UniFirst discriminated against him and wrongfully discharged him because he had filed a workers' compensation claim.

UniFirst and Mr. Seever moved to compel arbitration of Mr. Caldwell's claims. They asserted that the parties had entered into a mutually-binding and enforceable arbitration agreement that required them to arbitrate, not litigate, disputes arising out of Mr. Caldwell's employment with UniFirst. Defendants further argued that the arbitration agreement delegated all formation and enforcement issues, including all threshold issues, to the arbitrator for determination.

When Mr. Caldwell began working for UniFirst, he signed an Employment Agreement and Restrictive Covenant. That agreement provided that Mr. Caldwell was hired for a two-week period that automatically renewed every two weeks, unless terminated by either party, for any

3

reason, upon two weeks' notice. The short-duration employment agreement also contained a non-compete clause, a number of restrictive covenants regarding the protection of UniFirst's trade secrets and confidential information, and the following arbitration clause:

9. Arbitration of Disputes

*Any* controversy or *claim* arising out of or relating to this Agreement or the breach thereof or otherwise *arising out of the EMPLOYEE's employment or termination of that employment* (including, without limitation, any claims of unlawful employment discrimination whether based on age or otherwise) *shall*, to the fullest extent permitted by law, *be settled by arbitration* in any forum and form agreed upon by the parties or, in the absence of such an agreement, *under the auspices of the American Arbitration Association* ("AAA") in the city of the AAA office nearest the location of the EMPLOYEE's most recent employment with the COMPANY, *in accordance with the Employment Dispute Resolution Rules of the AAA*, including, but not limited to, the rules and procedures applicable to the payment and selection of arbitrators. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. This Section 9 shall be specifically enforceable. Notwithstanding the foregoing, this Section 9 shall not preclude either party from pursuing a court action for the sole purpose of obtaining a temporary restraining order or a preliminary injunction in circumstances in which such relief is appropriate including, but not limited to, per Section 10 below; provided that any other relief shall be pursued through an arbitration proceeding pursuant to this Section 9.[1]

(Emphasis supplied.)[2] The Employment Dispute Resolution Rules of the AAA, referenced here, and generally referred to by the parties as the "delegation provision," state that an arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, *Employment Arbitration Rules and Mediation Procedures*, Rule 6a. The AAA rules further provide that the arbitrator "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part...." *Id.*, Rule 6b.

---

[1] Section 10 generally provides that in the event of an employee's breach, UniFirst is entitled to injunctive relief without showing damages.

[2] Mr. Caldwell does not argue that his claims are not covered or within the purview of this arbitration agreement.

4

The circuit court denied defendants' motion, with two key holdings. The court first found that Mr. Caldwell was an at-will employee, and as such his employment was not valid consideration to create a valid agreement to arbitrate. Secondly, the circuit court found that the employment agreement lacked mutuality, because UniFirst had reserved for itself that ability to assert its claims against Mr. Caldwell in court, while Mr. Caldwell was forced to arbitrate any claims he might have.

Defendants appealed, and this Court affirmed, holding that the purported arbitration agreement lacked consideration, and therefore a valid agreement to arbitrate did not exist. After we issued our decision, the Supreme Court of Missouri issued its *Soars* decision and directed this Court to reconsider our decision.

### Standard of Review

Whether the trial court should have granted a motion to compel arbitration is a question of law that this Court reviews *de novo*. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018).

### Discussion

This Court is constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri. Mo. Const. Art. V, § 2; *McMillan v. Pilot Travel Centers, LLC*, 515 S.W.3d 699, 706 (Mo. App. E.D. 2016). Little difference exists between the facts and provisions in *Soars* and those at issue in this case. *Soars* controls here.

We begin with the most basic of principles. Arbitration is a matter of contract. *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003); *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 683 (Mo. App. E.D. 2015). Any obligation to arbitrate is based on assent and agreement. *NutraPet Systems, LLC v. Proviera Biotech, LLC*, 542 S.W.3d 410,

413 (Mo. App. W.D. 2017). Arbitration will only be compelled where a valid arbitration agreement exists and the specific dispute falls within the scope of that agreement. *Id.* A party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. *Morrow v. Hallmark Cards Inc.*, 273 S.W.3d 15, 21 (Mo. App. W.D. 2008). Arbitration is "a way to resolve disputes - but only those disputes - that the parties have agreed to submit to arbitration." *Dotson v. Dillard's Inc.*, 472 S.W.3d 599, 603 (Mo. App. W.D. 2015). Nor may an arbitrator act, absent an agreement. "Arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017).

A delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. *Soars*, 563 S.W.3d at 114. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." *Dotson*, 472 S.W. 3d at 603. As noted in *Soars*, a delegation provision "is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce." *Soars*, 563 S.W.3d at 114. The question of arbitrability - whether an agreement creates a duty for the parties to arbitrate the particular grievance - is undeniably an issue for judicial determination, unless the parties clearly and unmistakably provide otherwise. *Dotson*, 472 S.W.3d at 604; *Latenser v. Tarmac Int'l., Inc.*, 549 S.W.3d 461, 463 (Mo. App. W.D. 2018). We thus look to the agreement to see if the parties affirmatively addressed the question of who decides arbitrability. *Dotson*, 472 S.W. 3d at 602; *accord Soars*, 563 S.W.3d at 114. And in so looking, we conclude that the parties not only addressed the question, but clearly and unmistakably manifested an intent to delegate threshold issues of arbitrability to the arbitrator.

6

An arbitration agreement "need not recite verbatim that the parties agree to arbitrate arbitrability" in order to manifest "clear and unmistakable" agreement. *Dotson*, 472 S.W.3d at 604. A delegation provision that gives an arbitrator the authority to resolve disputes relating to the enforceability, validity, or applicability of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability. *Id.* at 606. Our Supreme Court, in *Soars*, found a clear, manifest intention to delegate threshold questions of arbitrability to an arbitrator where the parties expressly agreed to give an arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation." *Soars*, 563 S.W.3d at 114. To constitute "clear and unmistakable" evidence, a provision need only provide authority to the arbitrator; nothing requires that the provision, to be effective, also expressly exclude courts as an available forum." *Dotson*, 472 S.W. 3d at 606. Our Supreme Court, in *Pinkerton*, found clear and unmistakable evidence of the parties intent to delegate threshold issues of arbitrability to an arbitrator simply where the agreement referenced AAA rules, which in turn included a rule providing that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." *Pinkerton*, 531 S.W.3d at 48; *accord NutraPet Systems*, 542 S.W.3d at 416 (holding issues of arbitrability for arbitrator, not court, where agreement specifically incorporated rules of AAA); *accord Latenser*, 549 S.W.3d at 464 (finding parties clearly and unmistakably intended to delegate threshold issues of arbitrability to arbitrator where agreement incorporated AAA rules, with same delegation provision as in *Pinkerton*). The Supreme Court found clear and unmistakable intent to delegate threshold issues to an arbitrator even though a copy of the rules was not attached to the agreement or provided to the plaintiff. *Pinkerton*, 531 S.W.3d at 48; *accord Latenser*, 549 S.W.3d at 463-64 (giving effect to delegation

provision even though not explicitly written into arbitration provision where arbitration agreement simply referenced AAA rules).

The arbitration agreement here states that the Employment Dispute Resolution Rules of the AAA would govern arbitration. By clearly referencing AAA rules, the parties expressed their intent to arbitrate any dispute under those rules, including the rule providing that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." We thus hold that the parties clearly and unmistakably intended to delegate threshold issues to the arbitrator. *See Soars*, 563 S.W.3d at 114; *Pinkerton*, 531 S.W.3d at 48; *Latenser*, 549 S.W.3d at 463-64; *Dotson*, 472 S.W.3d at 604.

Accordingly, we are compelled to enforce the delegation provision save a meritorious direct challenge to the delegation provision. *Soars*, 563 S.W.3d at 114; *Dotson*, 472 S.W.3d at 608; *Latenser*, 549 S.W.3d at 463-64. A delegation provision may be invalidated, revoked, or otherwise found unenforceable upon such grounds as exist at law or in equity for the revocation of any contract. *Soars*, 563 S.W.3d at 114. However, because a delegation provision is an additional arbitration agreement, the delegation provision is severable and should be considered separately from the underlying arbitration agreement. *Id.* Thus, to properly contest the validity of a delegation provision, a party must challenge the provision specifically. *Id.* Absent such a direct, meritorious challenge to the delegation provision, the provision is valid and enforceable, and any challenge to the validity of the agreement as a whole is for the arbitrator. *Id.* A challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. *Dotson*, 472 S.W.3d at 605; *Latenser*, 549 S.W.3d at 464.

Mr. Caldwell contended that the delegation provision lacked consideration because his at-will employment is not valid consideration, and because the arbitration agreement lacked mutuality, in that UniFirst had carved out a unilateral right to pursue court action, while he was forced to arbitrate any claims he might have. Our Supreme Court has rejected this argument. *Soars*, 563 S.W.3d at 116-17. As in *Soars*, the parties here mutually agreed to proceed in accordance with the Employment Dispute Resolution Rules of the AAA, which includes a delegation provision to arbitrate threshold questions of arbitrability. "A contract consisting of mutual promises to undertake some legal duty or liability between parties is a bilateral contract." *Soars*, 563 S.W.3d at 116. In a bilateral contract, "a promise by one party to a contract is sufficient consideration for a promise by the other party." *Id.* The promises must not be illusory, meaning one party retains the unilateral right to amend the agreement and avoid its obligations. *Id.* But, as the Supreme Court instructed in *Soars*, when determining the existence of consideration, the Court does not evaluate the adequacy of the consideration because freedom of contract includes the freedom to make a bad bargain. *Id.* Here, when the delegation provision is severed from the rest of the arbitration agreement and considered by itself, as we are instructed to do, the parties mutually agreed to proceed in accordance with the AAA rules and to arbitrate threshold questions of arbitrability. Thus the agreement was bilateral in nature and supported by consideration. *Id.* at 117. Mr. Caldwell's challenges to the validity and enforceability of the agreement as a whole, including his contention that the arbitration agreement itself lacked consideration, are for the arbitrator. *Id.*

## Conclusion

The parties clearly and unmistakably intended to delegate threshold issues to the arbitrator. Mr. Caldwell's specific challenge to the delegation provision lacks merit. We thus

must treat the delegation provision as valid and enforceable. Accordingly, we reverse the circuit court's order, and remand the cause to the circuit court with directions to stay the case and order the parties to proceed to arbitration to determine threshold issues of arbitrability.

_____
LAWRENCE E. MOONEY, JUDGE

COLLEEN DOLAN, P.J. and
MARY K. HOFF, J., concur.