

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| LIANA VALLE, | ) | No. ED111609 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | 23SL-CC00220 |
| vs. | ) | |
| | ) | |
| THE SHACK RESTAURANT GROUP, LLC | ) | Honorable John N. Borbonus |
| d/b/a THE SHACK, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 5, 2023 |

### OPINION

The Shack Restaurant Group, LLC d/b/a The Shack ("The Shack") appeals from the Order of the circuit court denying The Shack's motion to dismiss and compel arbitration.[1] The Shack argues that the circuit court erred in denying its motion because the Arbitration Agreement contains a valid delegation provision mandating that the arbitrator has the exclusive authority to decide threshold issues of arbitrability. We reverse the Order of the circuit court.

### Factual and Procedural Background

*Sexual Discrimination Claim and Termination*

---

[1] Section 435.440 RSMo (2000) provides that an appeal may be taken from an order denying an application to compel arbitration made under Section 435.355. The Order denying the Shack's motion to compel arbitration is appealable.

Beginning in 2018, Liana Valle ("Valle") worked as a waitress and hostess for The Shack restaurant in Chesterfield, Missouri. Valle alleged that, in December 2021, she experienced unwanted sexual harassment and sexual touching by another employee while working at the restaurant. Valle inquired about whether other coworkers were experiencing similar sexual harassment and touching and to whom to report the incidents. On December 10, 2021, The Shack's owners confronted Valle about the "rumors" she was spreading and shortly thereafter removed her from the work schedule. Valle alleged that, on December 23, 2021, The Shack terminated Valle because it was "[The Shack's] belief that [Valle] would consider bringing a claim against [The Shack]," for sexual harassment, and it did not want a person "like that" working for it. The Shack never investigated Valle's claims of sex discrimination and harassment before terminating her employment. Prior to the termination, Valle never received any complaints or write-ups warranting discipline or termination from her employer.

On January 12, 2023, Valle filed the underlying Petition in the circuit court against The Shack for sex discrimination and retaliatory discharge after reporting sexual harassment. The Shack filed a motion to dismiss the Petition and to compel arbitration, alleging Valle had signed a "Dispute Resolution Program" ("DRP") with an Arbitration Agreement on March 30, 2019. Valle responded that she did not voluntarily sign the DRP, as she was led to understand that her refusal to sign would terminate her employment with the restaurant. Following briefing and argument by counsel, the circuit court denied The Shack's motion.[2]

---

[2] The record does not indicate that the parties requested the circuit court to issue findings of fact or a statement of the grounds for its decision as was their right under Rule 73.01(c). "When neither party requests the entry of findings of fact or conclusions of law, we assume the trial court resolved all issues of fact in accordance with the result reached." Rule 73.01(c); *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010). We note that here there was no evidentiary hearing, and the record is limited to: (1) Valle's Petition; (2) The Shack's Motion to Dismiss and Compel Arbitration, and supporting exhibits; (3) Valle's Memorandum in Response, and (4) the circuit court's Order denying The Shack's Motion without explanation.

*Arbitration Agreement*

Since 2018, Valle had been an at-will employee with The Shack. On March 30, 2019,

The Shack required Valle to sign the DRP to continue her employment and "as a condition of

employment and continued employment." The DRP repeatedly states it is binding on both parties

and may not be amended unilaterally by either party. The Arbitration Agreement in the DRP

includes the following provision:

> Mandatory Arbitration: Employer and Employee agree that any Claim shall be
> submitted to binding arbitration to be held in St. Louis City or County, Missouri
> and administered by UNITED STATES ARBITRATION & MEDIATION
> ("USAM") in accordance with USAM's Rules of Arbitration applicable at the
> time the arbitration is commenced. The Rules are available online at
> https:\\usam.com\rules-of-arbitration. You can also call the USAM at 314-231-
> 4642 if you have any questions about the arbitration process. If the USAM Rules
> are inconsistent with the terms of this DRP, the terms of this DRP shall govern.

Immediately following this provision, the Arbitration Agreement contains a delegation

provision, which states: "The Arbitrator, and not any federal, state, or local court or agency, shall

have the exclusive authority to resolve any dispute of any kind relating to enforceability or

formation of this DRP and the arbitrability of Covered Claims between the parties." Another

delegation provision appears under the heading "Arbitration Delegation Provision" and provides:

"The Arbitrator shall have the exclusive authority to resolve any disputes relating to

applicability, enforcement or formation of the DRP including any claim that the DRP is void or

unenforceable." The Arbitration Agreement defines the term "Covered Claims" as follows:

> . . . [A]ll grievances, disputes, controversies, claims, charges or causes of action
> that otherwise could be brought in a federal, state, or local court or agency under
> applicable federal, state, or local laws, arising out of or relating in any way to the
> Parties' employment relationship and/or the termination thereof, including claims
> Employee may have against the Employer or against its officers, directors,
> supervisors, managers, employees, or agents in their capacity as such or
> otherwise, or that the Employer may have against Employee. The Claims covered
> by this DRP include, but are not limited to, … claims for wrongful termination

3

(constructive or actual), claims for discrimination or harassment (including, but not limited to, harassment or discrimination based on … sex … ).

Finally, the Arbitration Agreement requires that any disputes between the parties be submitted to a three-level escalation process. "Level One" entails a preliminary informal meeting with The Shack's general manager, "Level Two" involves an intermediate review with The Shack's director of human resources, and "Level Three" requires arbitration.

On February 16, 2023, The Shack moved to dismiss Valle's Petition and compel arbitration under the DRP, arguing the issue of arbitrability is delegated to the arbitrator and cannot be determined by the circuit court. The Shack argued that the delegation provision is valid because the parties made mutual promises to be bound by the delegation provisions and The Shack did not retain the unilateral right to amend the agreement and avoid its obligations. In response, Valle argued The Shack failed to establish the existence of a valid contract to enforce the Arbitration Agreement because she was not offered adequate consideration to sign the document. She further alleged that the "mutual promises" to follow the DRP and arbitrate were merely illusory because The Shack did not follow its own DRP and she was not able to amend or alter any portion of the DRP. Additionally, Valle challenged the delegation provisions in the Arbitration Agreement, arguing they were not enforceable since the entire agreement lacked consideration to form an enforceable contract. Finally, Valle argued The Shack failed to show the delegation provisions standing alone fulfilled the contractual elements of offer, acceptance, and consideration.

On March 31, 2023, following briefing and argument by counsel, the circuit court entered its motion denying The Shack's motion to dismiss and compel arbitration without explanation. This appeal follows.

Standard of Review

4

The denial of a motion to compel arbitration, absent any factual disputes between the parties, is reviewed *de novo*. *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020). The validity of a delegation provision—a separate agreement to arbitrate threshold questions of arbitrability—is a legal issue and similarly receives *de novo* review. *Id.* (citing *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471, 474 (Mo. banc 2019)). However, "in an appeal from a circuit court's order overruling a motion to compel arbitration when there is a dispute as to whether the Arbitration Agreement exists, the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315, 321 (Mo. App. E.D. 2022) (quoting *Theroff*, 591 S.W.3d at 436).

Discussion

In its sole point on appeal, The Shack argues the circuit court erred in denying its motion to dismiss and compel arbitration because the Arbitration Agreement Valle signed contains a valid delegation provision, supported by consideration, mandating that the arbitrator has the exclusive authority to decide threshold issues of arbitrability. The Shack's point is well taken, and we reverse the Order of the circuit court.

As an initial matter, we address the parties' diverging positions on the proper standard of review. While Valle insists that she challenges the existence of the Arbitration Agreement, she does not dispute that she signed the DRP. Moreover, the circuit court in this case did not conduct an evidentiary hearing, did not receive testimony or evidence, and did not make any factual findings. *Cf. Theroff*, 591 S.W.3d at 435; *Lopez* 656 S.W.3d at 319. Accordingly, even if Valle had contested the Agreement's existence, there are no findings by the circuit court to which we must give deference on appeal. This Court therefore "reviews de novo the legal issue of whether

5

a valid, enforceable delegation clause exists within an Arbitration Agreement." *Theroff*, 591 S.W.3d at 436.

A valid delegation provision within an arbitration agreement "gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538, 202 L. Ed. 2d 536 (2019). Delegation provisions are subject to the "severability principle," meaning a party opposing arbitration and challenging a delegation provision must challenge the delegation provision separately from the arbitration agreement itself. *Id.*; *Theroff*, 591 S.W.3d at 439. The challenge must directly and specifically address the delegation provision. *Esser v. Anheuser-Busch, LLC*, 567 S.W.3d 644, 650 (Mo. App. E.D. 2018). The court must consider the delegation provision "standing alone" from the rest of the arbitration agreement. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 117 (Mo. banc 2018).

Here, the Arbitration Agreement contains two delegation provisions. The first delegation provision states: "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute of any kind relating to the enforceability or formation of [the] DRP and the arbitrability of Covered Claims between the parties." The second provision states: "The Arbitrator shall have the exclusive authority to resolve any disputes relating to applicability, enforcement, or formation of the DRP including any claim that the DRP is void and unenforceable."

Valle argues the parties did not agree to arbitrate threshold issues because the delegation provisions standing alone lacked adequate consideration to form a contract. She contends that her continued at-will employment was insufficient consideration for her acceptance of the DRP, including the delegation provisions, and no further consideration was offered. The Shack

6

responds that Valle's "at-will employee status is irrelevant in the face of [the] delegation provisions, which were supported by consideration, and which represented the parties' bilateral agreement to delegate all threshold issues to the arbitrator."

A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability is valid, irrevocable, and enforceable, except on the same grounds at law or in equity for the revocation of any contract. *Id*. at 114. An arbitrator's authority over a particular dispute exists only "because the parties have agreed in advance to submit such grievances to arbitration." *Id*. For example, a contract consisting of mutual promises to understand some legal duty or liability between parties is a bilateral contract and constitutes sufficient consideration. *Id*. at 116. In contrast, when one party retains the unilateral right to amend the agreement and avoid its obligations, the promise is illusory and is not sufficient consideration to form a valid contract. *Id*.

The Missouri Supreme Court has clearly held that parties' mutual promises to be bound by a delegation provision constitute sufficient consideration to render the delegation provision valid and enforceable so long as the promises are not illusory. *Id*. at 116-17. If a contract contains mutual promises imposing a legal duty or liability on each party as a promisor to the other party as a promisee, the contract is bilateral. *Bowers v. Asbury St. Louis Lex, LLC*, 478 S.W.3d 423, 426-27 (Mo. App. E.D. 2015). "A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." *Id*. at 427.

Valle argues the delegation provisions in the Arbitration Agreement were unenforceable for lack of consideration.[3] Specifically, Valle contends that no bilateral agreement supported by

---

[3] Despite The Shack's contrary position, we find that Valle sufficiently challenged the delegation provisions. Valle challenged both the DRP in its entirety and asserted a specific challenge to the delegation provisions in her memorandum in opposition to The Shack's motion to compel arbitration. Specifically, Valle challenged the validity of the delegation provisions and further argued they were unenforceable because "a contract was not formed under Missouri law, [so] no consideration exists that would allow a delegation provision to be enforceable." Further, Valle

7

consideration existed between the parties. She maintains that The Shack demonstrated its promise to follow the DRP was illusory, as it retained the right to "opt out" of the DRP at any time by ending Valle's at-will employment. Valle is incorrect for a number of reasons.

First, the requisite consideration consisted of the parties' mutual promises to arbitrate, not Valle's continued at-will employment. *See Soars*, 563 S.W.3d at 116-17. Second, a promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations. *Id*. at 116; *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. banc 2014). Here, The Shack retained no such right and Valle presents no authority supporting her contention that The Shack, by terminating her employment, unilaterally amended the DRP and its delegation provisions. Third, even if Valle were correct that The Shack "opted out of the DRP Process after Ms. Valle engaged in Level One," Valle, not The Shack, bore the burden to press her claim through the DRP and she does not plead that she did so.

Further, the larger question of whether The Shack violated any procedural prerequisites to arbitration under the DRP presents a threshold issue of the arbitrability of Valle's claim. That question rests with the arbitrator, not with the circuit court. Similarly, the determination of whether the DRP in its entirety is supported by sufficient consideration is a question that Valle and The Shack delegated to the arbitrator. The two delegation provisions "place gateway questions of arbitrability into the hands of an arbitrator" such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019). In other words, "[a]n agreement to arbitrate

---

specifically named the delegation provisions apart from the DRP and argued that deficiencies in the delegation provisions made them invalid and unenforceable. Valle thus sufficiently challenged the delegation provisions. *See Esser*, 567 S.W.3d at 650; *Harris v. Volt Management Corporation*, 625 S.W.3d 468, 475-76 (Mo. App. E.D. 2021).

a gateway issue is simply an additional, antecedent agreement the party seeking arbitration" asks the court to enforce. *Id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)); *see also Soars*, 563 S.W.3d at 117 ("Whether the Agreement as a whole contains illusory provisions is for the arbitrator to determine so long as the delegation provision, standing alone, is valid.").

In conclusion, the DRP that Valle signed confirmed her assent to, and acceptance of, the Arbitration Agreement, including the delegation provisions. The clear and unmistakable language of these provisions granted the arbitrator the exclusive right to determine threshold questions of arbitrability. Valle's at-will employee status is irrelevant in the face of these delegation provisions, which were supported by consideration, and which represented the parties' bilateral agreement to delegate all threshold issues to the arbitrator. Therefore, under the governing law and the undisputed facts, the parties' agreement to arbitrate was supported by their mutual promises to arbitrate and by the delegation provisions vesting the arbitrator with the exclusive right to decide all threshold questions of arbitrability. For all these reasons, the circuit court erred in denying The Shack's motion to dismiss and compel arbitration.[4]  Point granted.

Conclusion

The judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Cristian M. Stevens, Judge

Robert M. Clayton III, Presiding Judge and Philip M. Hess, Judge: concur.

---

[4] Though we sympathize with Valle's position as pleaded before the circuit court, we cannot disregard the plain language of the delegation provisions to which she agreed. Our duty is to apply the law even when the result may be perceived as harsh.