

# In the Missouri Court of Appeals
## Western District

GREER COOPER-DORSEY,            )
                           Respondent,   )         **WD82516**
v.                                                              )
                                                  )         **FILED:  October 29, 2019**
TIME WARNER CABLE,              )
                             Appellant.    )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE JUSTINE E. DEL MURO, JUDGE

### BEFORE DIVISION FOUR: KAREN KING MITCHELL, CHIEF JUDGE, PRESIDING
### LISA WHITE HARDWICK AND THOMAS N. CHAPMAN, JUDGES

Time Warner Cable ("TWC")[1] appeals the circuit court's denial of its motion to compel arbitration of claims brought by Greer Cooper-Dorsey, a former TWC employee. TWC contends the court erred in denying the motion to compel because the arbitration contract between the parties contained a delegation provision that required questions of arbitrability to be submitted to an arbitrator. Alternatively, TWC argues that the circuit court erred in determining that there was not a valid arbitration agreement between the

---

[1] In May 2016, TWC merged with Charter Communications, Inc., and Charter Communications currently functions as the parent company of TWC. Both parties refer to this merged entity as TWC, and for the sake of clarity, we will do the same.

parties.  For reasons explained herein, we reverse the denial of the motion to compel arbitration and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Cooper-Dorsey filed a petition in the Jackson County Circuit Court against TWC and three TWC supervisors alleging work-related claims of age discrimination, harassment, and retaliation in violation of the Missouri Human Rights Act ("MHRA"). TWC subsequently filed a motion to compel arbitration asserting that the onboarding forms provided to Cooper-Dorsey at the beginning of her direct employment contained an agreement requiring that this dispute be submitted to final and binding arbitration.[2]

The onboarding form entitled "Mutual Agreement to Arbitrate" stated, *inter alia*:

> that any and all claims, disputes, and/or controversies between you and TWC arising from or related to your employment with TWC shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").

The form also stated:

> You and TWC further agree that all arbitration proceedings shall be conducted in accordance with the JAMS Employment Arbitration Rules & Procedures [('JAMS rules")] and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness . . . **[p]lease read the JAMS rules carefully before electronically signing this agreement**."

The JAMS rules were not set forth in the onboarding document, but the form included a hyperlink to the JAMS website.

---

[2] Cooper-Dorsey was initially placed at TWC by an employment agency.  TWC extended Cooper Dorsey an offer of direct employment on or about May 9, 2016.

After receiving Cooper-Dorsey's suggestions in opposition to TWC's motion to compel arbitration, but before allowing TWC to file a reply, the circuit court summarily denied TWC's motion. TWC appeals.

STANDARD OF REVIEW

Whether the circuit court properly granted or denied a motion to compel arbitration is a question of law that we review *de novo*. *Ellis v. JF Enters., LLC*, 482 S.W.3d 417, 419 (Mo. banc 2016).

ANALYSIS

## I.  Delegation Provision

In Point I, TWC asserts that the circuit court erred in denying its motion to compel arbitration because the agreement to arbitrate between the parties contained a delegation provision that required questions of arbitrability to be submitted to an arbitrator. In response, Cooper-Dorsey contends: (1) the agreement to arbitrate did not properly incorporate a delegation provision; (2) TWC did not adequately demonstrate that the two parties had executed the agreement to delegate threshold questions to the arbitrator; and (3) the delegation provision is unconscionable.

### A.  The Federal Arbitration Act

The enforceability of arbitration agreements in all contracts involving interstate commerce is governed by the Federal Arbitration Act ("FAA").[3]  *State el rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015). Cooper-Dorsey does not dispute TWC's contention that the employment contract between the parties involves interstate

---

[3] 9 U.S.C. § 1 *et seq.*

3

commerce; hence, we will apply the provisions of the FAA in interpreting the arbitration agreement.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent–A–Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the act provides, in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. By enacting the FAA, Congress has demonstrated its intent to place arbitration agreements "on an equal footing with other contracts . . . and requires that courts enforce them according to their terms." *Rent–A–Ctr.*, 561 U.S. at 67 (citations omitted). Accordingly, the Supreme Court of the United States has stated that the savings clause of Section 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." [4] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "As such, arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses." *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. banc 2012).

---

[4] The term "savings clause" refers to the clause of Section 2 which states: "save upon such grounds as exist at law or in equity for the revocation of any contract."

## B. Delegation by Incorporation

"An arbitrator's authority over a particular dispute exists only 'because the parties have agreed in advance to submit such grievances to arbitration.'" *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)). Parties may grant an arbitrator the authority to determine threshold issues, *e.g.*, questions concerning the scope or applicability of an agreement to arbitrate or disputes over the formation or existence of an agreement, through the use of a delegation provision. *Rent–A–Ctr.*, 561 U.S. at 68-69. This agreement "to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the [court] to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Put another way, a delegation provision is a valid agreement to arbitrate under Section 2, "save upon such grounds as exist at law or in equity for the revocation of any contract[,]" which, pursuant to Section 4 of the FAA, courts may enforce to compel the parties to arbitrate their disputes. *Id.* (quoting § 2).

"Generally, any silence or ambiguity 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 43 (Mo. banc 2017) (quoting *Mitsubishi Motors Corp. v. Soler-Chrysler— Plymouth, Inc.* 473 U.S. 614, 626 (1985)). "This presumption of arbitrability, however, is reversed when considering whether a court or an arbitrator should decide threshold questions of arbitrability." *Id.* Consequently, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs.*, 475 U.S. at 649.

TWC contends that courts have routinely found that an internal reference to a set of arbitration rules, which itself contains a delegation provision, expresses a clear and unmistakable intent to arbitrate gateway issues. The Missouri Supreme Court has unequivocally agreed with this proposition, holding that "the incorporation of the American Arbitration Association (AAA) rules into the arbitration agreement provided clear and unmistakable evidence the parties intended to delegate threshold issues of arbitrability to the arbitrator."[5] *Pinkerton*, 531 S.W.3d at 40. In support of this holding, the Missouri Supreme Court stated:

> [T]his finding is consistent with most federal circuit courts, which have concluded arbitration agreements containing similar language were sufficient to incorporate by reference the delegation provision in the AAA rules. For example, arbitration agreements stating disputes will be "settled by," "conducted by," and "determined by" arbitration "in accordance with" specific rules containing a delegation provision have been held to have "clearly and unmistakably" incorporated the delegation provision into the arbitration agreement.

*Id.* at 45.

As stated *supra*, TWC's onboarding agreement to arbitrate stated that "all arbitration proceedings shall be *conducted in accordance with* the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness." (Emphasis added). If we apply the holding of *Pinkerton*, it becomes evident that the phrase "conducted in accordance with" contained within the agreement to arbitrate "was not a mere passing reference to these rules; instead, it was a clear reference to an identifiable, ascertainable set of rules." 531

---

[5] It makes no difference that TWC invoked the JAMS rules instead of the AAA ruleset because the decision in *Pinkerton* was not predicated on some quality unique to the AAA. Undoubtedly, several sets of commercial rules currently in effect would satisfy *Pinkerton*. *See* 531 S.W.3d at 40.

S.W.3d at 45.  Thus, this reference clearly and unmistakably incorporated the delegation provision within the JAMS rules.  *See id.* at 48.

Rule 11(b) of the JAMS rules presented by TWC below states:

Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are the proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  *Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.*

(Emphasis added).  Accordingly, we find that the parties' agreement to arbitrate contained a delegation provision requiring the parties to present gateway issues to an arbitrator.  *See Pinkerton*, 531 S.W.3d at 46-48.  This finding, however, does not terminate the inquiry in TWC's favor, as we must now determine whether TWC may enforce the incorporated delegation provision.

### C.      Cooper-Dorsey's Challenge to the Delegation Provision

Arbitration agreements are severable from the contract in which they appear.  *Id.* at 50.  "This means that they are to be considered separate and apart from any underlying or contemporaneous related agreements."  *Ellis*, 482 S.W.3d at 419.  Consequently, "[t]o invalidate an arbitration agreement a specific challenge must be made to the arbitration agreement, not to the contract as a whole."  *Pinkerton*, 531 S.W.3d at 50.  As discussed *supra*, the Supreme Court has determined that a delegation provision is nothing more than an additional agreement to arbitrate gateway issues.  *Rent–A–Ctr.*, 561 U.S. at 70.  Therefore, a party seeking to invalidate a delegation provision must specifically challenge the provision itself.  *Soars*, 563 S.W.3d at 114.  "Otherwise it is treated as valid and enforced – 'leaving any challenge to the

7

validity of the Agreement as a whole for the arbitrator.'" *Id.* (quoting *Rent–A–Ctr.*, 561 U.S. at 72).

In her suggestions in opposition to TWC's motion to compel arbitration, Cooper-Dorsey made two challenges to the delegation provision. These challenges were: (1) that TWC failed to provide evidence sufficient to demonstrate that she actually signed the delegation provision; and (2) that the delegation provision was unconscionable and thus unenforceable.[6] TWC alleges, *inter alia*, that neither assertion specifically challenged the validity of the delegation provision and that the FAA therefore requires that we compel the parties to submit these challenges to the arbitrator. While we agree that Cooper-Dorsey failed to lodge a specific challenge to the unconscionability of the delegation provision, the same cannot be said for her challenge regarding the formation of the delegation provision.

### i.      Unconscionability

In her suggestions in opposition to TWC's motion to compel arbitration, Cooper-Dorsey titled her second challenge to the delegation provision, "Enforcement of the Delegation Provision is Unconscionable." The focus of the arguments contained within that subdivision, however, was not the delegation provision. A close reading of the arguments shows that Cooper-Dorsey's challenge actually concerned the agreement to arbitrate her substantive claims. Her arguments were that: (1) the MHRA is an important civil rights code that bestows a concomitant right to a jury trial; (2) companies providing Alternative Dispute Resolution services "charge exorbitant fees"; (3) that it would be unconscionable to force a newly-terminated employee to pay the exorbitant

---

[6] For the sake of clarity, we will address the arguments Cooper-Dorsey raised below in reverse order.

8

fee of those providers; and (4) that an arbitrator would have a financial incentive to find in favor of arbitrability. Plainly, all but the final contention were broad challenges to the arbitration agreement, and Cooper-Dorsey's attempt to characterize these arguments as a challenge to the delegation provision cannot save them. *See Pinkerton*, 531 S.W.3d at 51-52. To the extent that we must address her fourth contention, however, the Missouri Supreme Court has already addressed—and refuted—Cooper-Dorsey's argument that the delegation of gateway issues is *inherently* unconscionable due to an arbitrator's direct financial interest in finding that a specific controversy is arbitrable. *See id.* at 51. Thus, we do not believe the circuit court denied TWC's motion to compel on this ground, as to do so would have been erroneous.

### ii. Cooper-Dorsey's Formation Challenge

Conversely, Cooper-Dorsey's first challenge—asserting that TWC had failed to prove the efficacy of its security measures during her onboarding process and that TWC therefore failed to prove that she had agreed to the delegation provision—was properly raised before the circuit court. TWC asserts that Cooper-Dorsey's challenge was insufficient because she "failed to raise any argument specific to the delegation provision—*i.e.*, an argument that does not also apply to the arbitration agreement as a whole—before the Circuit Court." This argument demonstrates a fundamental misunderstanding of the FAA and the cases interpreting its provisions. Neither *Pinkerton* nor *Soars* articulates a rule as expansive as TWC suggests.

In *Pinkerton*, the Missouri Supreme Court reiterated that, pursuant to the FAA, a challenge must be made specifically to the delegation provision. *See id.* at 51-52. In doing so, however, the Missouri Supreme Court recognized that *Rent–A–Center did not*

9

hold that a challenge expressing an error common to the delegation provision and the substantive arbitration agreement would be innately deficient under the FAA.[7]  *Id.* at 51. Indeed, Justice Scalia, writing for the majority in *Rent–A–Center*, stated:

> *It may be that had [the proponent] challenged the delegation provision by arguing that these common procedures as applied to the delegation provision rendered that provision unconscionable, the challenge should have been considered by the court.*  To make such a claim based on the discovery procedures, [the proponent] would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable.  That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable.

561 U.S. at 74 (emphasis added).

In *Soars*, the Missouri Supreme Court denied several challenges purportedly directed at a delegation provision because the arguments advanced against the provision "were expressly identical to [the] arguments against the Agreement as a whole."  563 S.W.3d at 115.  TWC contends that *Soars* forecloses Cooper-Dorsey's arguments concerning the formation of the delegation provision because the Court asserted that challenges that are "in effect" challenges to the agreement as a whole are not specific challenges to the delegation provision. *See id.* (discussing *Pinkerton*). While we agree that *Soars* does stand, in part, for that proposition, we do not agree that, under the reasoning of *Soars*, any challenge asserting a common procedure or

---

[7] "While a party may challenge a delegation provision by arguing 'common procedures as applied to the delegation provision rendered that provision unconscionable,' . . . Mr. Pinkerton did not direct his challenges specifically to the delegation provision." *Pinkerton*, 531 S.W.3d at 51 (quoting *Rent–A–Ctr.*, 561 U.S. at 74.).

10

error *as applied to the delegation provision* is, in effect, a challenge to the agreement as a whole. *See Pinkerton*, 531 S.W.3d at 51.

Here, Cooper-Dorsey challenged the delegation provision by arguing that TWC could not demonstrate that the electronic signature record provided with the motion to compel was, in fact, her act. While she later challenged the formation of the arbitration agreement on the same ground, she first challenged TWC's evidence regarding the efficacy of its security measures surrounding the electronic signature record and how they were a*pplied to the delegation provision*. This specificity was not articulated by the party in *Soars*, who stated that the "disputed agreement and the disputed delegation clause fail for *the same reasons*: they lack consideration, lack mutuality of obligation, and are unconscionable." 563 S.W.3d at 115 n.4. Further, as discussed *supra*, the *Pinkerton* court explicitly expressed approval for a challenge alleging error connected with a common procedure, if that challenge specifically focused on the application of such procedure to the delegation provision. 531 S.W.3d at 51. Therefore, Cooper-Dorsey's first challenge was sufficiently specific, and the final question remaining before this court on Point I is whether a valid delegation provision existed between the parties.

**D.      The Existence of a Delegation Provision Between the Parties**

Missouri has adopted the Uniform Electronic Transactions Act ("UETA").[8] The UETA provides, *inter alia*, that "an electronic record or electronic signature is attributable to a person if it was the act of the person." § 432.240.1, RSMo 2016.[9] "The act of the person may be shown in any manner, including a showing of the efficacy of

[8] Section 432.200, RSMo *et seq.*

[9] All statutory references are to the Revised Statutes of Missouri 2016.

11

any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.* "The effect of an electronic record or electronic signature attributed to a person . . . is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." § 432.240.2.

In support of its motion to compel, TWC presented two affidavits, one from Chance Cassidy, the Senior Director of Charter's Employee Services Center, and another from Sari M. Alamuddin, an attorney of record in this case. In his affidavit, Cassidy stated that he personally reviewed TWC's employment records created during Cooper-Dorsey's onboarding. He asserted that these records indicated that Cooper-Dorsey accepted the offer of employment on May 16, 2016. Cassidy stated that, to accept the online offer of employment, Cooper-Dorsey would have needed to enter a "unique login ID and temporary confidential access code." Cassidy declared that no individual at TWC would have had access to Cooper-Dorsey's confidential access code and that Cooper-Dorsey was prohibited from sharing the code with anyone. Cassidy stated that, once logged into the onboarding site, Cooper-Dorsey would have been prompted to complete the arbitration agreement at issue in this case. Cassidy further asserted that TWC's onboarding site recorded that Cooper-Dorsey's electronic acceptance of the agreement to arbitrate had occurred on May 16, 2016, at 5:46 p.m. In support of this assertion, Cassidy attached a document titled "Onboarding Status Details," which appears to be a report created by TWC's onboarding program to track an individual candidate's progress through the onboarding process.

12

In her suggestions in opposition, Cooper Dorsey attached an affidavit of her own in which she swore, *inter alia*, that she "recall[ed] completing some electronic forms after [she] received an offer of employment, but that [she has] no specific recollection of completing an arbitration agreement. She further stated that she never discussed arbitration with anyone from TWC. Additionally, Cooper-Dorsey stated that she would have "never knowingly agree[d] to waive [her] right to have access to the courts to adjudicate any civil rights claims that [she] might have pursuant to federal or Missouri law against TWC or Charter (or any of their employees)."

TWC contends that these affidavits demonstrate the efficacy of the security procedures as applied to Cooper-Dorsey's onboarding process. TWC argues, therefore, that Cassidy's affidavit, in conjunction with the "Onboarding Status Details" report, conclusively refutes Cooper-Dorsey's assertion that she never agreed to the delegation provision. We disagree. These affidavits do not dispose of the issues presented by the parties. On the contrary, they create an issue of disputed fact, about which the circuit court was required to hold an evidentiary hearing. *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006).

Section 435.355.1[10] allows courts to address motions to compel in summary proceedings, which are those "conducted '[w]ithout the usual formalities [and] without a

---

[10] Section 435.355.1 states:

> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

13

jury.'"[11] *Id.* at 351 (alteration in original) (quoting BLACK'S LAW DICTIONARY 1476 (8th ed. 1999)). Where there are "disputed factual issues, [however,] it is necessary to conduct an evidentiary hearing." *Id.* at 352. Here, the court did not hold an evidentiary hearing, instead entering a summary denial after receiving suggestions in support and opposition, which included affidavits and exhibits that created an issue of disputed fact.[12]

This error was compounded by the circuit court's denial of the motion to compel arbitration before giving TWC the opportunity to respond to Cooper-Dorsey's suggestions in opposition. As TWC had the burden of proving the existence of a valid and enforceable arbitration agreement, *Esser v. Anheuser-Busch, LLC*, 567 S.W.3d 644, 651 (Mo. App. 2018), it should have been afforded a meaningful opportunity to respond to Cooper-Dorsey's suggestions in opposition after her response created a disputed issue of fact. *See Nitro*, 194 S.W.3d at 352. While we are mindful that the circuit court is free to rule against the party with the burden of proof—even if the burdened party's evidence is uncontroverted, *White v. Dir. of Revenue*, 321. S.W.3d 298, 305 (Mo. banc 2010)—it may not do so prior to receiving evidence sufficient to resolve the dispute before it. *See Nitro*, 194 S.W.3d at 352. Without a responsive pleading or a hearing before the circuit court, we cannot say that the factual disputes

---

[11] "While the FAA's substantive law applies in state courts, the procedural provisions of the FAA do not bind state courts unless the state procedures in some way defeat the rights granted by Congress." *Nitro*, 194 S.W.3d at 351. Our Supreme Court has previously determined that the procedure outlined in Section 435.355.1 does not defeat the rights granted by the FAA. *See id.* As such, we will apply Section 435.355.1 in determination of this suit.

[12] While Cooper-Dorsey correctly asserts that the circuit court was, and remains, free to disbelieve the evidence presented by TWC, *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012), that power does not discharge the court's duty to hold a hearing pursuant to Section 435.355.1 once it is presented with an issue of disputed fact. *See Nitro*, 194 S.W.3d at 352

14

present in this matter have been adequately resolved.  Accordingly, we reverse and remand the cause for an evidentiary hearing.[13]  *See id.*

## II.    Validity of the Agreement to Arbitrate

In Point II, TWC contends that the circuit court erred in denying its motion to compel because, even if the delegation provision was unenforceable, the parties still entered into an enforceable agreement to arbitrate the disputes presented by Cooper-Dorsey's discrimination suit.  In light of our disposition of TWC's first point, we need not reach the merits of this claim.  Point II is denied.

### CONCLUSION

Based on the foregoing, we reverse and remand this case to the circuit court for an evidentiary hearing on the motion to compel arbitration.

_____
**LISA WHITE HARDWICK, JUDGE**

ALL CONCUR.

---

[13] In such proceedings, however, the circuit court is not required to entertain live testimony or provide formal findings of fact and can resolve the contested issues by receiving "affidavits, deposition transcripts and other materials."  *Nitro*, 194 S.W.3d at 352.