**Michael CORDAS, Plaintiff,**

**v.**

**UBER TECHNOLOGIES, INC., Defendant.**

**Case No. 16–cv–04065–RS**

United States District Court, N.D. California.

Signed January 5, 2017

Kristopher Philip Badame, Joseph Holland Hunter, Michele Eileen Pillette, Badame and Associates, APC, Lake Forest, CA, for Plaintiff.

Shon Morgan, Arthur Miles Roberts, Quinn Emanuel Urquhart and Sullivan, LLP, William Lewis Stern, Claudia Maria Vetesi, Lucia X. Roibal, Tiffany Cheung, Morrison & Foerster LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

RICHARD SEEBORG, United States District Judge

### I. INTRODUCTION

Uber Technologies, Inc. ("Uber") moves to compel arbitration in this putative class action filed by Michael Cordas. For the reasons that follow, Uber's motion is granted.

### II. BACKGROUND

In July 2015, Cordas downloaded the Uber ride-sharing app and attempted to request a ride in New York City. His requested ride did not appear after the estimated 10-minute arrival time elapsed, and Cordas was unsuccessful in his attempts to contact the driver. Cordas received a notification from Uber that he would be charged $10 for cancelling his ride, but he denies ever cancelling. Cordas later experienced similar incidents in Toronto and Irvine, California. Cordas now alleges Uber's "deceptive, false, misleading and illusory business policies and practices ... were designed and created ... to generate millions of dollars based on their fraudulent, unearned and unconscionable 'Cancellation Fees.'" Compl. ¶ 51. As a result, Cordas filed this putative class action against Uber, bringing ten different claims for relief. In response, Uber filed this motion to compel arbitration, claiming Cordas agreed to Uber's terms of service and that the terms of service require arbitration of this dispute.[1]

### III. LEGAL STANDARD

■ Because Uber's terms and conditions are "a contract evidencing a transaction involving commerce," they are subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th

---

1. According to Uber, the terms of service Cordas agreed to contained the following arbitration agreement: "ARBITRATION. You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration between you and Uber, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class or representative proceeding. Further, unless both you and Uber otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding." Mot. to Compel Arbitration 5.

Cir. 2000). "The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' ... and permits a party 'aggrieved by the alleged ... refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron*, 207 F.3d at 1130 (quoting 9 U.S.C. § 4) (second omission in original). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The role of a district court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130 (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

## IV. DISCUSSION

Cordas raises a number of arguments for why Uber's motion to compel arbitration should be denied. They are all unavailing.

### A. Whether Cordas Agreed to Uber's Terms and Conditions

■■■ Cordas's first argument against arbitration is that he never agreed to Uber's terms and conditions, which are the source of the arbitration provision Uber invokes. " 'Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.' " *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980)). The party opposing arbitration shall receive the benefits of all reasonable doubts and inferences. *See id.* Questions of contract formation are questions of state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts."). The parties agree California law applies in this case. Under California law, mutual assent is the key to contract formation. *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App.4th 832, 850, 89 Cal.Rptr.2d 540 (1999).

With its motion and reply brief, Uber submitted declarations of Engineer Manager Christopher Brauchli. In the declarations, Brauchli explains how, when Cordas downloaded the Uber app and created an account, he would have been presented with the notice: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy." Brauchli Dec. ¶ 7.According to Brauchli, no account could be created unless the user navigated through the screen containing this notice; the same screen required the new registrant to click "DONE" in order to create an account. The phrase "Terms & Conditions and Privacy Policy" was displayed in a clickable box that linked a user to the pages containing the then-current terms and conditions and privacy policies. Brauchli states Cordas created his account on an iPhone 6 around July 25, 2016, and submits a screenshot of what Cordas would have seen at the time he created his account. He also attests that the personal settings on a user's phone will not alter the

"sign up flow" that requires, on the same page displaying the terms and conditions notice, the user to click "DONE" in order to create an account. Thus, Brauchli declares:

> [T]he user could not have created an Uber account and taken rides using the Uber App without completing all of the steps in the registration process .... This is based on technological constraints built into the Uber App.... If the user did not input the requested information, move through each screen, and click "DONE" on the screen stating that "By Creating an Uber account, you agree to the Terms & Conditions and Privacy Policy," the rider would not be able to request a ride using the Uber app.

Brauchli Reply Dec. ¶ 7. According to Brauchli, his declaration is based on his personal knowledge as an Uber engineer manager responsible for overseeing the rider sign-up and registration process, and on records kept by Uber in the ordinary course of business that he has access to and is familiar with.

Cordas lodges a litany of conclusory evidentiary objections against Brauchli's declaration. Specifically, he objects that some or all of the statements in Brauchli's declaration are: unsupported legal conclusions that violate Federal Rule of civil procedure 56(e); lacking foundation; lacking personal knowledge; complete speculation; hearsay; improper lay witness opinion; assuming facts not in evidence; prejudicial and confusing/misleading; lacking authentica-

tion; and/or lacking an original copy. All of these objections are overruled.[2] At the outset, Cordas elaborates on very few of them, and supports most of them with only cursory citations to the Federal Rules of Evidence. *See Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Local 595*, 989 F.Supp.2d 912, 918 n.1 (N.D. Cal. 2013) (overruling conclusory objections). More importantly, Brauchli's declarations are admissible. They contain no legal conclusions or arguments; are based on Brauchli's personal knowledge; are based on records kept by Uber in the ordinary course of business (and are therefore not hearsay); assume no facts not in evidence; are not misleading, confusing, or prejudicial; are not speculative; and are not improper opinion evidence. Likewise, to the extent the screenshots Brauchli submitted required authentication, he has authenticated them with his testimony from personal knowledge. *See* Fed. R. Evid. 901(b)(1). Similarly, no original of the screenshots is required because they are not a writing, recording, or photograph. *See* Fed. R. Evid. 1002. It is difficult, if not impossible, to conceive of how an "original" screenshot would be presented.

Cordas also submits his own declaration, claiming he was not given notice of the terms and conditions when he signed up for Uber, that when he signed up his "phone settings were not in 'default' mode, and [his] phone screen did not display anything even remotely similar to the generic depictions attached to the Brauchli declaration," and that the "font, the screen

---

**2.** Cordas filed a lengthy list of perfunctory evidentiary objections to Brauchli's first declaration, in violation of the local rules. *See* Civ. Local R. 7–3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."). Those objections will not be considered. Cordas also filed objections to Brauchli's reply declaration. These objections are mostly proper. *See* Civ. Local R. 7–3(d)(1). To

the extent they are proper, they will be considered. To the extent, however, these "objections" are really an attempt to point out shortcomings in Uber's briefs, *see, e.g.,* Objs. to Brauchli Reply Dec. 2–3 ("Uber never considers or addresses Mr. Cordas' use of the phone in a horizontal orientation ...."), they are improper argument and will not be considered. *See* Civ. Local R. 7–3(d)(1).

size, display, personal settings, and the orientation of the screen shots and keyboard shots [in the Brauchli declaration] do not remotely represent" what he saw when signing up for the app. Cordas Dec. ¶¶ 3, 8, 9. Likewise, he argues in opposition to Uber's motion that Brauchli fails to account for a phone's potential orientation and personal settings. None of these arguments, however, are relevant. Cordas does not claim to have had his phone in a horizontal orientation, does not say what his settings were at the time he signed up, offers no testimony or evidence regarding what he *did* see on his screen, and offers no evidence to rebut Brauchli's reasoned declaration other than his own conclusory allegations that he never received notice of the terms and conditions and that Brauchli's declaration is false and inadequate. In short, Cordas raises no *genuine* dispute of any *material* fact, and it is proper to conclude, as a matter of law, that he was on notice of Uber's terms and conditions, and assented to them in signing up for Uber. *See Three Valleys*, 925 F.2d at 1141. Thus, he is bound by them. *See Binder*, 75 Cal. App.4th at 850, 89 Cal.Rptr.2d 540.

**B. Whether Uber's Terms and Conditions Are an Unenforceable 'Browsewrap' Agreement**

 Cordas next argues Uber's terms and conditions amount to an unenforceable "browsewrap" agreement. "[A] browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly ... [a] party instead gives his assent simply by using the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (citation and internal quotation marks omitted) (second alteration in original). "Thus, by visiting the website—something that the user has already done—the user agrees to the Terms of Use ...." *Id.* (citation and internal quotation marks omitted). "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* (citation and internal quotation marks omitted). "Courts have ... been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website." *Id.* (citing *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 838 (S.D.N.Y. 2012) (finding user assented by clicking "Sign Up" after being presented with notice stating: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service.")).

The agreement at issue is not a browsewrap agreement; an Uber user is not told he has assented to Uber's terms and conditions simply by passively viewing one screen of the Uber app. Instead, he must affirmatively assent to Uber's terms and conditions by clicking "DONE" to complete his sign-up process on a page clearly displaying the notice: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy." Only by clicking "DONE" does the user assent. If he does not create an account, he does not agree to Uber's terms and conditions. By creating an account on the Uber app, Cordas "affirmatively acknowledge[d] the agreement" and is bound by its terms. *See Nguyen*, 763 F.3d at 1176; *Fteja*, 841 F.Supp.2d at 838; *Binder*, 75 Cal.App.4th at 850, 89 Cal.Rptr.2d 540 ("To form a contract, a manifestation of mutual assent is necessary."); *see also Cullinane v. Uber Techs., Inc.*, No. CV 14–14750–DPW, 2016 WL 3751652, at *8 (D. Mass. July 11, 2016) ("The language surrounding the button leading to the Agreement is unambiguous

in alerting the user that creating an account will bind her to the Agreement. And the word "Done," although perhaps slightly less precise than "I accept," or "I agree," makes clear that by clicking the button the user has consummated account registration, the very process that the notification warns users will bind them to the Agreement."). Thus, the parties agreed to arbitrate; the only questions remaining are whether that agreement is valid and whether it encompasses this dispute. *See Chiron*, 207 F.3d at 1130 (citations omitted).

### C. Who Should Decide Whether the Dispute Is Arbitrable

In its motion, Uber argues the threshold issue of whether Cordas's case can and should be submitted to arbitration is itself a question for an arbitrator. Cordas disagrees. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) ("[T]here is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability."). Conversely, "a court must enforce an agreement that ... clearly and unmistakably delegates arbitrability questions to the arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). The parties have clearly agreed to arbitrate, *see supra* Parts IV.A–B, so the question becomes whether that agreement "clearly and unmistakably delegates arbitrability

questions to the arbitrator." *Brennan*, 796 F.3d at 1132.

According to Uber, its arbitration agreement's incorporation of the AAA Commercial Arbitration Rules shows the parties' clear and unmistakable intent to delegate arbitrability questions to an arbitrator because the AAA rule provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rule 7–6(a).[3] In *Brennan*, the Ninth Circuit held "incorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." 796 F.3d at 1130. Importantly, *Brennan* reserved the question of whether its holding extended to consumer contracts because it dealt with a commercial contract, but noted:

> Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.

---

**3.** The arbitration agreement in Uber's terms and conditions provides: "ARBITRATION RULES AND GOVERNING LAW. The arbitration will be administered by the American Arbitration Association ("*AAA*") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "*AAA Rules*") then in effect ...." Mot. to Compel Arbitration 5–6.

796 F.3d at 1130–31 (9th Cir. 2015) (collecting cases). This statement strongly indicates approval of other decisions enforcing arbitrability delegation via incorporation of the AAA rules. Likewise, "nearly every ... decision in the Northern District of California ... has consistently found effective delegation of arbitrability regardless of the sophistication of the parties." *Zenelaj v. Handybook Inc.*, 82 F.Supp.3d 968, 973 (N.D. Cal. 2015) (collecting cases). Although one notable decision in this District has held incorporation by reference of the AAA rules in a consumer contract did not amount to clear and unmistakable evidence of the parties' intent to delegate arbitrability, *Tompkins v. 23andMe, Inc.*, No. 5:13–CV–05682–LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014), *aff'd on other grounds*, 840 F.3d 1016 (9th Cir. 2016), it was decided before *Brennan*.

Altogether, the clear weight of authority supports the conclusion Uber's terms and conditions provide clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator, and Cordas has advanced no persuasive argument to the contrary. Because the parties agreed to arbitrate, *see supra* Parts IV.A–B., and agreed to delegate questions of arbitrability to an arbitrator, the remaining questions of whether the arbitration agreement is valid and whether it encompasses this dispute are delegated to an arbitrator.[4] *See Brennan*, 796 F.3d at 1133 (citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72, 130 S.Ct. 2772, 177

L.Ed.2d 403 (2010)). Accordingly, Uber's motion to compel arbitration is granted.[5]

## V. CONCLUSION

Uber's motion to compel arbitration is granted, and the case is hereby stayed, pending completion of the arbitration. The Clerk is directed to close the file for administrative purposes. It may be reopened for such additional proceedings as may be appropriate and necessary upon conclusion of the arbitration.

**IT IS SO ORDERED.**

---

4. It may have been possible for Cordas specifically to challenge the delegation clause as unconscionable, thereby raising a question for the Court rather than the arbitrator. *See Brennan*, 796 F.3d at 1132–34 (citations omitted). Cordas, however, did not make such a challenge. Insofar as he challenges the enforceability of the entire arbitration agreement, he

raises a question for the arbitrator. *See id.* (citations omitted).

5. Because the arbitrability of this dispute is itself a question for an arbitrator, it is neither necessary nor appropriate to consider the parties' positions regarding the scope and validity of the arbitration agreement.