

# In the
# Missouri Court of Appeals
# Western District

TINA AND PAUL FOGELSONG, ET AL.,

              **Respondents,**

v.

JOE MACHENS AUTOMOTIVE
GROUP INC., ET AL.,

              **Appellants.**

**WD82705**

**OPINION FILED:**

**April 28, 2020**

Appeal from the Circuit Court of Boone County, Missouri
The Honorable R. Jeffrey Harris, Judge

Before Division One:
Lisa White Hardwick, P.J., Cynthia L. Martin, and Thomas N. Chapman, JJ.

Joe Machens Automotive Group, Inc., Joe Machens Nissan, Inc., and GRD Auto Sales, Inc., (collectively "Machens") appeal the Order of the Circuit Court of Boone County, Missouri, denying Machens's motion to stay this class action lawsuit and compel the parties to attend arbitration. Machens advances two points on appeal. For the reasons detailed fully in this opinion, we reverse and remand with directions.

### *Facts & Procedural Background*

Carol Benna, Patrick Bonnot, and Tina and Paul Fogelsong ("Plaintiffs") filed a class action petition against Machens. Plaintiffs alleged that they purchased vehicles from Machens which Machens marketed and sold as "factory-fresh" and brand new. Plaintiffs further alleged

that this representation was false, and that Machens fraudulently concealed that the vehicles had in fact sustained hail damage requiring repair prior to the sales. Machens moved to compel the parties to participate in arbitration and to stay the civil action pending the outcome of the arbitration.

In its motion, Machens contended that each of the Plaintiffs had executed a "Retail Buyers Order" in connection with the vehicle purchases. The Retail Buyers Order included an agreement which required the signatories to arbitrate any dispute, claim, or controversy that might arise between the customer and the company. The arbitration agreements that Machens sought to enforce provided as follows:

**ARBITRATION**

MANDATORY ARBITRATION OF DISPUTES. ANY CLAIM, CONTROVERSY OR DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY) SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, PURSUANT TO THE FOLLOWING TERMS.

a. The Federal Arbitration Act, not state law, shall govern the arbitration process and the question of whether a claim is subject to arbitration. The customer, however, retains the right to take any claim, controversy or dispute that qualifies to small claims court rather than arbitration.

b. A single arbitrator engaged in the practice of law will conduct the arbitration. The arbitrator will be selected according to the rules of the American Arbitration Association or, alternatively, may be selected by agreement of the parties, who shall cooperate in good faith to select the arbitrator. The arbitration shall be conducted by, and under the then-applicable rules of, the American Arbitration Association. Any required hearing fees and costs shall be paid by the parties as required by the applicable rules, but the arbitrator shall have the power to apportion such costs as the arbitrator deems appropriate.

c. The arbitrator's decision and award will be final and binding, and judgment on the award rendered by the arbitrator may be entered in any court with jurisdiction.

2

d. No claim, controversy or dispute may be joined in an arbitration with a claim, controversy or dispute of any other person, or resolved on a class-wide basis. The arbitrator may not award damages that are barred by this Agreement and the Customer and the Company both waive any claims for an award of damages that is excluded under this Agreement.

The Retail Buyers Orders required two signatures from Plaintiffs. The first signature was for the purchase, which indicated directly above the signature line: "**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**" The second signature was for the arbitration agreement itself.

After limited discovery and oral arguments by the parties, the circuit court denied Machens's motion, concluding that the arbitration agreements were unconscionable. Days after the circuit court entered its judgment, the Supreme Court of Missouri handed down its decision in *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36 (Mo. banc 2017). In that case, the Supreme Court held that parties to an arbitration agreement can delegate the issue of arbitrability to the arbitrator by incorporating by reference the Rules of the American Arbitration Association ("AAA Rules"). *See id*. at 48. Machens appealed, citing the language in the Retail Buyers Orders providing for mandatory arbitration "conducted by, and under the then-applicable rules of, the American Arbitration Association." *Fogelsong v. Joe Machens Auto. Grp., Inc.*, 564 S.W.3d 393, 395-96 (Mo. App. W.D. 2018) ("*Fogelsong I*").[1] Machens contended that the AAA Consumer Rules applied to the arbitration provisions contained in the Retail Buyers Orders. *Id*. at 396. Section R-14 of the AAA Consumer Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the

---

[1] In setting forth the facts underlying this appeal, we borrow liberally from our opinion in *Fogelsong I* without further attribution.

existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id*.

Because the parties' arbitration agreement incorporated the AAA Rules, and because the applicable subset of the AAA Rules expressly delegated threshold issues of arbitrability to the arbitrator, Machens argued that the enforceability of the arbitration agreement was an issue for the arbitrator, rather than the circuit court to decide. *Id*. On appeal, this Court agreed that remand was required "to give both parties an equal opportunity to argue the validity of the delegation provision to the circuit court following the Supreme Court's recent decision in *Pinkerton*." *Id*. at 399. On remand, Machens filed a renewed motion to stay the proceedings and compel arbitration in light of *Pinkerton*. After further briefing by the parties and oral argument, the circuit court entered an order denying Machens's renewed motion. The circuit court found that the arbitration agreement's incorporation of the AAA Rules did not clearly and unmistakably evince the parties' intent to delegate the threshold issue of arbitrability to the arbitrator. This appeal follows.[2]

## *Discussion*

Machens asserts two points on appeal. In its first point, Machens argues that the circuit court erred in denying its motion to stay the case and compel arbitration because the Retail Buyers Orders manifest the parties' clear and unmistakable intent to delegate the issue of arbitrability to the arbitrator. In its second point, Machens argues that the circuit court erred in concluding that the arbitration agreement as a whole is unconscionable and otherwise unenforceable. Plaintiffs respond that the arbitration agreement is "inherently ambiguous" as to

---

[2] "An order denying a motion to compel arbitration is appealable under section 435.440, RSMo." *Hughes v. Ancestry.com*, 580 S.W.3d 42, 46 n.6 (Mo. App. W.D. 2019).

the question of whether the parties intended to delegate the issue of arbitrability. They argue further that the delegation provision is unconscionable and unenforceable, as is the arbitration agreement as a whole. Because we grant Machens's first point on appeal, we need not address its second point.

We review the circuit court's denial of a motion to compel arbitration *de novo*. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018). "An arbitrator's authority over a particular dispute exists only because the parties have agreed in advance to submit such grievances to arbitration." *Id*. (citation and internal quotation marks omitted). A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. [The Supreme Court of the United States has] recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010). Generally, disputes regarding the scope of an arbitration agreement are resolved *in favor of* arbitrability. *Soars*, 563 S.W.3d at 114. "However, when considering whether a court or an arbitrator should decide threshold questions of arbitrability, there is generally a presumption *against* arbitrability." *Id*. In this regard, the Missouri Supreme Court has recognized that there must be "clear and unmistakable evidence" that the parties intended to arbitrate the question of arbitrability "to overcome this presumption." *Id*.

In *State ex rel. Pinkerton v. Fahnestock*, Pinkerton enrolled at an aviation maintenance school. 531 S.W.3d at 40. To attend the school, Pinkerton was required to sign an enrollment agreement which provided, in part, that "any controversy, claim or dispute of any sort arising out of or relating to…student admission, enrollment, financial obligations and status as a

5

student…shall be submitted for arbitration, to be administered by the American Arbitration Association located within Virginia Beach, Virginia, in accordance with its commercial arbitration rules." *Id*. Section R-7 of the AAA Commercial Rules defined the scope of the arbitrator's "jurisdiction" as follows: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id*. at 41. Pinkerton was not provided a copy of the AAA Commercial Rules, but he nevertheless signed the agreement and enrolled in the aviation technician maintenance program. *Id*. at 40-41.

Pinkerton eventually graduated as the valedictorian of the night school. *Id*. at 41. Despite receiving his certification from the federal aviation administration, Pinkerton alleged that he was unable to find employment in the field of aviation. *Id*. He then sued the school alleging that it fraudulently misrepresented its "job placement rates…and the costs and benefits of its educational programs." *Id*. The school moved to dismiss or to stay the proceedings and compel arbitration, citing the enrollment agreement's mandatory arbitration provision. *Id*. It contended further that "the arbitration agreement delegated threshold arbitrability disputes, such as whether an arbitration clause is enforceable or its applicability to the dispute at issue, to the arbitrator by incorporating by reference the AAA's jurisdictional rule into the arbitration agreement." *Id*. Pinkerton argued that the parties' agreement had not clearly and unmistakably incorporated the delegation provision of the AAA Commercial Rules, that the provision was unconscionable, and that it lacked consideration. *Id*. at 42. The circuit court sustained the school's motion to compel arbitration, finding that the parties had delegated gateway questions of arbitrability by incorporating the AAA Commercial Rules in the enrollment agreement. *Id*.

6

On appeal, the Supreme Court of Missouri affirmed the circuit court's order granting the school's motion to compel arbitration. *Id*. at 53. In its analysis, the Court cited the general principle that "matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." *Id*. at 45. The Court further observed that parties may "incorporate contractual terms by reference to a separate, noncontemporaneous document," even though the document is not signed by the parties or attached to their agreement. *Id*. In *Pinkerton*, the enrollment agreement specifically incorporated the AAA Commercial Rules, which the Court described as "a clear reference to an identifiable, ascertainable set of rules." *Id*. The Supreme Court therefore held that by incorporating the AAA Commercial Rules (including the delegation provision therein), the parties manifested a clear and unmistakable intent to delegate threshold issues of arbitrability to the arbitrator. *Id*. at 48.

Plaintiffs assert (and the circuit court agreed) that *Pinkerton* is distinguishable from the case under review because (1) the Retail Buyers Orders did not identify a *specific subset* of the AAA Rules (as did the enrollment agreement in *Pinkerton*), and (2) the agreement's reference to the "then-applicable" AAA Rules is unclear. Because of these ambiguities, Plaintiffs argue, the Retail Buyers Orders did not clearly and unmistakably evince the parties' intent to delegate gateway issues of arbitrability to the arbitrator. We reject this argument and therefore reverse the circuit court's order.

Importantly, the Supreme Court's decision in *Pinkerton* does not suggest that its holding depends upon the distinction advocated by Plaintiffs. Rather, the Supreme Court's opinion indicates that the relevant inquiry is whether the arbitration rules are identified in the contract in such a way that they can be ascertained by the signatories beyond doubt. In this connection, the Court cited with approval a number of federal cases, including two opinions wherein the courts

7

specifically held that a contractual reference to the AAA Rules (without identifying an applicable subset) constitutes a clear and unmistakable incorporation of the applicable delegation provision in the Rules. *See Brennan v. Opus Bank,* 796 F.3d 1125, 1131 (9th Cir. 2015) (holding that the "parties' incorporation of the AAA rules constituted 'clear and unmistakable' evidence of their intent to submit the arbitrability dispute to arbitration.")[3]; *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same), *abrogated on unrelated grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019).

Plaintiffs' argument is further undercut by this Court's opinion in *NutraPet Sys., LLC v. Proviera Biotech, LLC*, 542 S.W.3d 410 (Mo. App. W.D. 2017). There, the contract which the defendants (and counter-claimants) sought to enforce contained a mandatory arbitration provision stating that "any dispute, controversy or claim arising out of or in connection with, or relating to, this agreement…shall, upon the request of any party involved, be submitted to and settled by binding arbitration…pursuant to the rules then in effect of the American Arbitration

---

[3] Plaintiffs direct the Court's attention to *Tompkins v. 23andMe, Inc*., No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), which involved a dispute between a class of customers and a company "that offer[ed] to provide customers hereditary information from a genetic sample." *Id*. at *1. The company's online "Terms of Service" provided that "[a]ny [d]isputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association…" *Id*. at *2. The *Tompkins* court held "that a bare reference to the AAA rules in 23andMe's online contract does not show that the parties clearly and unmistakably intended to delegate arbitrability." *Id*. at *11. In reaching this conclusion, the court emphasized the lack of sophistication of the consumers bringing the claims against the company. *Id*. at *11-13.

This Court is not bound by the decisions of federal district courts. *Godat v. Mercantile Bank of Nw. Cty.*, 884 S.W.2d 1, 4 n.1 (Mo. App. E.D. 1994). Instead, we are required to apply the law as set forth by the Supreme Court of this state. *State v. Thigpen*, 548 S.W.3d 302, 313 (Mo. App. E.D. 2017) (the Court of Appeals is "constitutionally bound to follow controlling decisions of the Missouri Supreme Court."). As explained throughout this opinion, our Supreme Court indicated in *Pinkerton* that appellate courts are not to weigh the relative sophistication of contractual parties when determining whether a "clear and unmistakable" intent to delegate arbitrability appears from the four corners of the agreement. *Pinkerton*, 531 S.W.3d at 48. Moreover, *Brennan* (decided after *Tompkins*) suggests that district court's holding in *Tompkins*—that a "bare reference to the AAA rules" does not constitute an effective delegation in the consumer context—is no longer good law even within the Ninth Circuit. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (stating that "nearly every ... decision in the Northern District of California ... has consistently found effective delegation of arbitrability regardless of the sophistication of the parties[,]" and rejecting *Tompkins* on the ground that it "was decided before *Brennan*.").

Association." *Id*. at 413. Relying upon this provision, the defendants moved to compel

arbitration, but the circuit court denied the motion. *Id*. On appeal, this Court held:

> The arbitration provision contained in the Independent Contractor Agreement
> specifically incorporated "the rules then in effect of the American Arbitration
> Association" and, since the trial court's decision in this case, our Supreme Court
> has held that "the incorporation of the American Arbitration Association (AAA)
> rules into [an] arbitration agreement provide[s] clear and unmistakable evidence
> that the parties intended to delegate threshold issues to the arbitrator." *Pinkerton*,
> 531 S.W.3d at 39–40. As a result, issues of arbitrability relating to the
> counterclaims are to be determined by the arbitrator and not the courts.

*Id*. at 416. This incorporation of "the rules then in effect of the American Arbitration

Association" is effectively indistinguishable from the one at issue here, which references "the

then-applicable rules[] of the American Arbitration Association."[4] We held in *NutraPet* that such

an incorporation is sufficient to satisfy the "clear and unmistakable" standard set forth by our

Supreme Court in *Pinkerton*, and Plaintiffs advance no compelling reason to disturb that

precedent.[5]

---

[4] Plaintiffs are not helped by their reliance on *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. banc 2015). There, Hewitt, an equipment manager, filed suit for age discrimination after he was informed by the St. Louis Rams that his contract would not be renewed. *Id*. at 804. Hewitt agreed in his employment contract "to abide by and to be legally bound by the Constitution and By–Laws and Rules and Regulations of the National Football League…." *Id*. at 810. "In its order compelling arbitration, the trial court found that the NFL dispute resolution procedural guidelines governed the arbitration procedure and that both parties were bound by the guidelines." *Id*. The Supreme Court of Missouri disagreed, holding that the arbitration guidelines were not referenced in Hewitt's employment contract and were not clearly referenced in the NFL constitution and bylaws. *Id*. at 811. It held further that although his employment contract identified the "Rules and Regulations of the National Football League," "[t]his reference d[id] not identify the guidelines in such a way that Mr. Hewitt could ascertain them beyond doubt." *Id*. The instant case does not present a situation where the party seeking to compel arbitration is relying upon arbitration rules and procedures that were not referenced in the agreement. The Retail Buyers Orders clearly provided for arbitration under the "then-applicable rules of the American Arbitration Association." The applicable rules could be ascertained beyond doubt, thus distinguishing *Hewitt*. *See id*.

[5] In attempting to distinguish *NutraPet* from the instant matter (and elsewhere throughout their brief), Plaintiffs contrast their status as individual consumers from the sophisticated commercial entities involved in *NutraPet*. However, our Supreme Court made clear in *Pinkerton* that an analysis focused on the respective sophistication of the parties is misplaced when determining whether an agreement has incorporated a delegation provision contained in the AAA Rules. *Pinkerton*, 531 S.W.3d at 48 (noting that "Missouri courts have never considered the sophistication of the contractual parties in determining the parties' intent with respect to arbitration agreements[,]"

9

Plaintiffs posit that the failure of the Retail Buyers Orders to identify a *specific subset* of the AAA Rules creates an ambiguity as to whether the parties manifested a clear and unmistakable intent to incorporate the delegation provision included in the AAA Consumer Rules. Specifically, they argue that "[c]onsumers would have difficulty determining which AAA rules apply." We do acknowledge that Plaintiff Patrick Bonnot executed the Retail Buyers Order on September 12, 2012, and Plaintiff Carol Benna signed the agreement on July 25, 2014. The AAA Consumer Rules became effective on September 1, 2014; prior to that date, the AAA Commercial Rules governed claims arising out of consumer purchase contracts. As Tina and Paul Fogelsong executed their purchase contracts on October 31, 2014, the AAA Consumer Rules have always governed their potential claims. Plaintiffs contend that the agreements are unclear because they fail to indicate which subset of the AAA Rules apply, that it was thus unclear whether their disputes were to be governed by the AAA Commercial Rules or the AAA Consumer Rules, and that this further obfuscated whether they intended to delegate arbitrability to the arbitrator.

With respect to Plaintiffs Tina and Paul Fogelsong, section R-1 of the AAA Consumer Rules states that the AAA will apply the Consumer Rules when "the arbitration agreement is contained within a consumer agreement … *that does not specify a particular set of rules*" and specifically identifies "automobile…purchase contracts" as an example of agreements that fall within the subset's purview. Since the applicability of the Consumer Rules to the claims asserted by Tina and Paul Fogelsong was readily ascertainable by simply perusing the AAA Rules, that clarification eliminates any purported confusion. Although Plaintiffs Carol Benna and Patrick

---

and rejecting an approach which would give "differential treatment for consumers for purposes of contract interpretation.").

10

Bonnot executed the Retail Buyers Orders *prior* to the date the Consumer Rules became effective, Section R-7 of the AAA Commercial Rules defined the arbitrator's "jurisdiction" to include threshold issues of arbitrability. Thus, even if some or all Plaintiffs might have been uncertain about whether the Consumer or Commercial Rules covered their purchase agreements, that confusion could not reasonably extend to the delegation issue as both subsets delegated arbitrability to the arbitrator.[6]

Also unavailing is Plaintiffs' related contention that the agreement's reference to the "then-applicable" AAA Rules creates an ambiguity as to whether the parties intended to delegate

---

[6] We recognize that, as the Eastern District of this Court put it, "*Pinkerton* directs us to look for 'a clear reference to an identifiable, ascertainable set of rules,' measured '**at the time the parties signed the underlying agreement**.'" *St. Louis Reg'l Convention v. Nat'l Football League*, 581 S.W.3d 608, 614 (Mo. App. E.D. 2019) (quoting *Pinkerton*, 531 S.W.3d at 45 n.2). Thus, when there is otherwise insufficient evidence of an intent to delegate at the time the parties signed their agreement, we will not find that the parties delegated threshold questions of arbitrability based upon a delegation provision contained in a set of rules promulgated *after* the agreement's execution. *See id*. at 616. In *St. Louis Reg'l Convention*, for example, the parties entered into a lease agreement in 1995, providing that "any claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Amended Lease … shall be settled by arbitration conducted … in accordance with *the most applicable then existing rules of the American Arbitration Association*[.]" *Id*. at 612 (emphasis added). The appellants argued that the AAA Commercial Rules (which governed the parties' dispute at the time it arose) included a delegation provision and that the lease agreement's incorporation of "the most applicable then existing" AAA Rules established clear and unmistakable evidence of the parties' intent to delegate arbitrability. *Id*. at 614-16. The Eastern District rejected this assertion primarily because the AAA Commercial Rules did not include "the jurisdictional delegation language necessary to 'clearly and unmistakably' evidence a delegation of arbitrability to an arbitrator" until "nearly a decade" after the parties executed the lease. *Id*. at 616.

This case does not present a situation where a party is seeking to impose a delegation provision that did not exist, but was then later added to the applicable AAA Rules. As we have explained more fully above, both the AAA Commercial Rules and the AAA Consumer Rules contain delegation provisions demonstrating that each Plaintiff's agreement reserves the issue of arbitrability for arbitration *regardless* of which subset governed the agreements when they were executed. The instant matter is therefore distinguishable from *St. Louis Reg'l Convention* because Machens is not making the illogical argument that the parties clearly intended to delegate arbitrability based upon a purportedly incorporated delegation provision that did not exist at the time the parties executed the Retail Buyers Orders. There is no danger that a delegation provision is being retroactively grafted into the agreements. Instead, when the parties signed their agreements (whether before or after the promulgation of the Consumer Rules) the applicable subset of the AAA Rules delegated gateway issues of arbitrability to the arbitrator. *See Pinkerton*, 531 S.W.3d at 40 n.2 (indicating that where the AAA Commercial Rules were superseded by the AAA Consumer Rules *after* the parties signed the agreement, this change was immaterial to the issue of delegation because both subsets contained identical delegation provisions).

arbitrability. Plaintiffs assert that the term "then-applicable" could potentially be a reference to the AAA Rules applicable at the time the parties executed the Retail Buyers Orders, at the time a dispute pertaining to that agreement arose, or when the arbitration actually occurred. Because different sets of Rules may be "then-applicable" at different times, Plaintiffs contend that the arbitration agreement does not contain a clear reference to an identifiable, ascertainable set of rules. In making this argument, however, Plaintiffs extract the term "then-applicable" from its proper context. The uncertainty vanishes upon reading the whole sentence in which that term appears: "The arbitration shall be conducted by, and under the then-applicable rules of, the American Arbitration Association." The sentence therefore makes clear that it is referring to the AAA Rules applicable at the time *the arbitration is conducted*.

To the extent Plaintiffs may be arguing that an ambiguity as to the parties' intent exists because the contract incorporates the AAA Rules applicable at an undetermined future time, we reject this contention as well. The parties' incorporation of the AAA Rules applicable at the time of *arbitration*, rather than at the time of the contract's *execution*, reflects their desire to litigate potential controversies under the most up-to-date set of rules (and not to bind themselves to a set of rules which may become obsolete or undergo major revisions by the time the parties eventually arrive for arbitration). Courts in other jurisdictions have enforced the parties' incorporation of a delegation provision contained in the AAA Rules although the agreement employed similarly flexible language anticipating that the applicable subset may undergo revisions or even be replaced. *See, e.g., Med. Shoppe Int'l, Inc. v. Edlucy, Inc.*, No. 4:12-CV-161 CAS, 2012 WL 1672489, at \*4 (E.D. Mo. May 14, 2012) ("[T]he parties clearly and unmistakably agreed to submit all questions of arbitrability to an arbitrator[]" where the agreement provided that "[a]ll controversies, disputes or claims ... shall be heard by one

12

arbitrator in accordance with the then current Commercial Arbitration Rules of the AAA."); *Washington v. William Morris Endeavor Entm't, LLC*, No. 10 CIV.9647 PKC JCF, 2011 WL 3251504 (S.D.N.Y. July 20, 2011). More importantly, this Court itself has found clear and unmistakable evidence of an intent to delegate arbitrability where the agreement provided that any dispute between the parties would be submitted to arbitration under the AAA Rules "then in effect." *NutraPet*, 542 S.W.3d at 416. That the Retail Buyers Orders attempt to accommodate potential revisions or updates to the AAA Rules does not invalidate the parties' clear intent to delegate arbitrability.[7]

In light of our decision in *NutraPet*, the Court holds that the Retail Buyers Orders effectively incorporated by reference the applicable AAA Rules and the delegation provisions contained therein. *State v. Chase*, 490 S.W.3d 771, 774 (Mo. App. W.D. 2016) ("Under the *stare decisis* doctrine, a court follows earlier judicial decisions when the same point arises again in litigation."). This holding is consistent with *Pinkerton* and its progeny as well as the decisions of numerous courts in other jurisdictions. By clearly referencing the AAA Rules, which include a delegation provision in the applicable subset, the parties manifested their intent to submit threshold issues of arbitrability to the arbitrator. Having determined that the parties intended to

---

[7] Plaintiffs rely heavily on a footnote from our decision in *Fogelsong I*. There, we observed that the "AAA's web site contains almost 60 different sets of 'active rules' depending on the type of agreement." *Fogelsong I*, 564 S.W.3d at 397 n.3. We also noted that Machens's counsel acknowledged at oral argument in *Fogelsong I* that a lay person would have difficulty determining which set of the AAA Rules was applicable to the Retail Buyers Orders. *Id*. However, the inquiry does not depend on the number of existing AAA rule sets or whether a lay consumer might encounter some difficulty understanding the structure of the AAA Rules. *Pinkerton*, 531 S.W.3d at 48 ("Missouri courts apply the longstanding principle that a party's failure to read or understand the terms of a contract is not a defense to enforcement of those terms."). The question is whether the applicable rules were identified in the agreement so that the rules (and the provision delegating arbitrability) could be ascertained beyond doubt. *Id*. at 45. As we have explained throughout this opinion, that test was satisfied in the present case.

incorporate the delegation provisions set forth in the AAA Rules, we turn finally to Plaintiffs' assertion that the delegation provision is unconscionable and unenforceable.

"A delegation provision may be invalidated, revoked, or otherwise found unenforceable upon such grounds as exist in law or in equity for the revocation of any contract." *Hughes v. Ancestry.com*, 580 S.W.3d 42, 48 (Mo. App. W.D. 2019) (citation omitted). "However, because a delegation provision is an additional arbitration agreement, ***the delegation provision is severable and should be considered separately from the underlying arbitration agreement***." *Id.* (emphasis added) (citation omitted). Thus, in order to invalidate a delegation provision, a party must directly challenge its enforceability. *Latenser v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 464 (Mo. App. W.D. 2018). "A direct challenge is one that specifically addresses the delegation provision." *Id.*

In their brief, Plaintiffs argue that the delegation provision is unconscionable because (1) "the entire Machens arbitration provision – including the clause purporting to incorporate the 'then-applicable' AAA rules – was nonnegotiable"; (2) "Machens was in a far-superior bargaining position when compared to the [Plaintiffs]"; (3) the contract's reference to the "then-applicable" AAA Rules "is in tiny font, and part of a boilerplate form"; and (4) Machens's employees were not trained regarding the arbitration provision and were thus presumably ill-equipped to explain its contents to potential car buyers. Based on this evidence, Plaintiffs urge the Court to find that the delegation provision is unconscionable just "[a]s the trial court did with the arbitration provision as a whole."[8]

---

[8] *Pinkerton* provides an example of a "direct challenge" to a delegation provision. There, the party challenging the enforceability of the delegation provision contended that it was unconscionable to delegate threshold questions of arbitrability to the arbitrator. *Pinkerton*, 531 S.W.3d at 52.

Although Plaintiffs attempt to frame these contentions as specific challenges to the delegation provision itself, they tacitly acknowledge that they are relying upon the same arguments "they direct[] at the arbitration agreement as a whole; an approach specifically rejected by our courts." *Hughes*, 580 S.W.3d at 49. "In light of the delegation clause, these arguments should be decided by the arbitrator, not this Court." *Latenser*, 549 S.W.3d at 464.

We conclude that by incorporating the AAA Rules, the parties clearly and unmistakably manifested their intent to delegate gateway issues of arbitrability to the arbitrator. Plaintiffs' challenges to the enforceability of the arbitration agreements are therefore reserved for arbitration. Point I is granted. The case is reversed and remanded with instructions to stay the proceedings and compel arbitration.[9]

### *Conclusion*

We conclude that the circuit court erred in denying Machens's motion to stay Plaintiffs' class action lawsuit and compel arbitration. In light of the parties' incorporation of the AAA Rules, which in turn delegate threshold issues of arbitrability to the arbitrator, any dispute regarding the enforceability of the arbitration agreements is for the arbitrator to adjudicate. We remand to the circuit court to enter an order staying this case and compelling the parties to participate in arbitration.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

All concur.

---

[9] In Machens's second point on appeal, it argues that the circuit court erred in concluding that the arbitration agreement is unconscionable. In light of the parties' incorporation of the delegation provision contained in the AAA Consumer Rules, any dispute pertaining to the enforceability of the arbitration agreement is for the arbitrator to decide. We therefore do not address Machens's second point.